FRANK GORMAN v. MURPHY DIESEL COMPANY, a corporation of the State of Delaware:

PHILIP NOLAN v. MURPHY DIESEL COMPANY, a corporation of the State of Delaware.

(*November* 12, 1942.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*James R. Morford* for the plaintiffs.

*E. Ennalls Berl* for the defendant.

Superior Court for New Castle County, September Term, 1942.

LAYTON, Chief Justice:

These are general demurrers to declarations alleging substantially the same facts. It is alleged that the defendant was the manufacturer of internal combustion engines, commonly known as Diesel engines or motors; that such engines are imminently dangerous in that they operate through the explosion of vapors and gases produced by oil, which explosions if not controlled and confined by proper cylinders, pistons and other appliances will endanger the life and safety of persons in the vicinity of such engine; that the plaintiff was an employee of George A. Fuller Company and Merritt, Chapman & Scott, Inc., as an oiler on a Crawler Drag Line Crane, the motive power of which consisted of a Diesel engine manufactured and sold by the defendant, and was in the performance of his duties at a Naval Air Base in the State of Rhode Island; that Northwest Engineering Company had manufactured the crane, and on July 1, 1939, purchased the engine from the defendant to serve as the source of motive power thereof; that the crane and engine had been acquired by American Concrete & Steel Pipe Company from Northwest Engineering Company on July 31, 1939; that the crane and engine had been acquired by George A. Fuller Company from American Concrete and Steel Pipe Company on July 23, 1940; that at the time the engine was sold and delivered by the defendant to Northwest Engineering Company the defendant knew or should have known that the engine was imminently and foreseeably dangerous to the life and limb of those operating it or in close proximity thereto while it was in operation in that it "con-

tained certain hidden and concealed structural and mechanical defects, the exact nature and character are to the plaintiff unknown but which defects were such that upon the use of said Diesel engine there was imminent and foreseeable danger that the explosions of the fuel thereof would not be confined and controlled but that such engine * * * would explode and injure persons working near said engine * * *"; that the defendant concealed said imminently and foreseeably dangerous condition from the respective purchasers; that on November 2, 1940, the plaintiff was engaged in his duties as oiler of the crane, and was required to be in close proximity to the engine; that the plaintiff was in the exercise of due care and caution and was without knowledge or means of acquiring knowledge of the dangerous and defective condition of the engine; that the engine by reason of its defective and dangerous condition, "without any negligence on the part of any other person or persons entering therein as a part of the efficient cause thereof," and without warning to the plaintiff, exploded with great force and violence; that the plaintiff was injured as a result of the explosion.

One contention of the defendant may be disposed of briefly. It contends that, as the injury resulting from its alleged negligence was sustained entirely in Rhode Island, the law of that State is applicable. That is the general rule; but unless it is shown expressly that a different law applies, the Court is entitled to assume that the case will be governed by the laws of the forum. 11 Am. Jur. 314. Furthermore, there is nothing in the cases cited by the defendant to suggest a conflict of opinion between the courts of Rhode Island and this Court with respect to the applicable principles of law.

The plaintiffs say in their brief that they base their causes of action, in large part, on the legal principles and factual analogies of *Huset v. J. I. Case Threshing Machine*

*Co.*, (8 Cir.) 120 F. 865, 61 L. R. A. 303, plus the doctrine of implied knowledge as established by the later cases.

■■    The general rule, as stated in the cited case, is that a contractor, manufacturer or vendor is not liable to third parties who have no contractual relations with him, for negligence in the construction, manufacture or sale of the articles he handles.  What is called the third exception to the rule is stated to be that one who sells or delivers an article which he knows to be imminently dangerous to life or limb of another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not.  The exception, entitled perhaps to stand as a rule in itself, is based on the broad ground that the manufacturer of an article, though not inherently dangerous but which may become so when put to its intended use, owes a duty to the public to employ reasonable care, skill and diligence in its manufacture.  If a machine negligently constructed is reasonably certain to imperil life or limb, it is a thing of danger; and where the manufacturer knows that the machine will be used, and without new tests, by persons other than the purchaser, a duty is imposed on him to use due care in its construction.  As in negligence generally, liability is based on a reasonable foreseeability of danger; and knowledge of probable, not possible, danger is an essential element of the liability.  *MacPherson v. Buick Motor Car Co.*, 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440.  It has been said that the MacPherson case lays down a rule which can be easily abused.  *Dillingham v. Chevrolet Motor Co.*, (D. C.) 17 F. Supp. 615.  There has been much diversity of opinion among eminent judges with respect to the decisions, the criticism being directed more, perhaps, to the application of the principles than to the soundness of the principles themselves.  One instance will serve as an illustration.  In *Johnson v. Cadillac Motor Car Co.*, due to de-

fective spokes as in the MacPherson case, the plaintiff was injured as a result of the collapsing of a wheel of an automobile manufactured by the defendant but purchased from a dealer. The wheels had been supplied to the defendant by a reputable manufacturer, and were painted with a priming coat when delivered. Judge Ray was of opinion that the defendant, in the performance of its general duty of inspection, was not obliged to scrape the paint from thousands of wheels and tens of thousands of spokes in an effort to discover the quality of the wood used. C. C., 194 F. 497. In the Circuit Court of Appeals, (2 Cir.) 221 F. 801, L. R. A. 1915E, 287, Ann. Cas. 1917E, 581, a divided court held that there was no liability at all in the absence of wilful injury or fraud, and was not persuaded to the contrary by the decision in *MacPherson v. Buick Motor Co.*, 160 App. Div. 55, 145 N. Y. S. 462. The case was again before the same court differently constituted, and in the meantime, the New York Court of Appeals had approved the decision in the MacPherson case in the celebrated opinion by Judge Cardozo. The reasoning of the opinion was approved, and it was held that the manufacturer of an automobile was not at liberty to put its product on the market without subjecting the wheels to what was called "ordinary and simple tests." 2 Cir., 261 F. 878, 882, 8 A. L. R. 1023.

■ An internal combustion engine, in and of itself, is not a thing of danger. It is an inert mass of metal. When put to its intended use it is imminently dangerous if negligently constructed. The manufacturer, in a proper case, ought to be answerable for want of care and skill in its construction, even though the injured person had no contractual relations with him.

■ The time when the accident and resulting injury occurred, whether soon or long after the sale and delivery of the article causing the injury, is manifestly of importance upon the question of its known imminently dangerous qual-

ity when sold and delivered. In *Huset v. J. I. Case Thresh-ing Machine Co., supra,* the injury occurred immediately after the sale of the threshing machine. In *Statler v. Geo. A. Ray Mfg. Co.,* 195 N. Y. 478, 88 N. E. 1063, the explosion of a large coffee urn or boiler occurred at practically its first use. In *Heizer v. Kingsland, etc., Mfg. Co.,* 110 Mo. 605, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. Rep. 482, a threshing machine was used for the first time on a Saturday; on the following Tuesday the steam cylinder exploded. In *Necker v. Harvey,* 49 Mich. 517, 14 N. W. 503, due to a defective shaft, an elevator fell three days after its installation. In *Heckel v. Ford Motor Co.,* 101 N. J. L. 385, 128 A. 242, 39 A. L. R. 989, a pulley attached to a tractor burst shortly after its purchase. On the other hand, in *Loop v. Litchfield,* 42 N. Y. 351, 1 Am. Rep. 543, the machine had been in operation for five years before a balance wheel on a circular saw burst. The Court's comment was that the risk could hardly have been an imminent one. In *Ford Motor Co. v. Wolber,* (7 Cir.) 32 F. 2d 18, a tractor had been in use for over two years before it "summersaulted" to the plaintiff's injury. This fact, said the Court, led to the conclusion that the manufacturer was not negligent in the design and construction of the machine. In *Lynch v. International Harvester Co.,* (10 Cir.) 60 F. 2d 223, a threshing machine had been in use for five years during which time its operators had walked in safety upon the covering of a revolving cylinder, the collapse of which caused the injury. These facts, said the Court, were a conclusive denial and contradiction of the allegations that the machine was imminently dangerous to life and limb when it was sold and delivered. In *Dillingham v. Chevrolet Motor Co., supra,* the automobile had been in safe use for nine months. The Court remarked that this fact indicated perfect design and construction.

The foundation of these actions is negligence. The negligence is alleged to be the existence of such hidden struc-

tural and mechanical defects as to make the engine imminently dangerous to the users of it. What the defects were, the plaintiffs do not know; but they charge actual or imputed knowledge to the defendant. Broad and general conclusions of fact are relied upon to require the defendant to vindicate its product throughout the entire course of manufacture.

In the absence of any averment to the contrary, it must be assumed that the engine had been in safe use by three different owners over a period of sixteen months before it exploded. Machinery, in general, is in the hands of persons varying in intelligence and habits of care. It deteriorates and weakens through use. These facts go very far to disprove the charge that the engine was both imminently and foreseeably dangerous to life and limb when it was sold. Rules of law imposing upon manufacturers of machinery liability for negligence in construction are in aid of the general public welfare. A wise public policy necessarily requires some definite limitation to liability.

Generally, one who seeks to compel another to respond in damages for injuries resulting from alleged negligent conduct is required to set out the negligent act or the facts from which negligence is plainly inferable with such particularity that will reasonably apprise the defendant of what he will be required to meet at the trial; and it is not sufficient to state the result or conclusion of fact arising from circumstances not alleged, or a general statement of facts which admits of almost any sustaining proof. *Campbell v. Walker,* 1 Boyce 580, 76 A. 475. In exceptional cases where, by reason of the relationship of the parties, the defendant is under a high duty to prevent injury, or where the act itself bespeaks negligence, the mere averment of injurious result may be sufficient. But the defendant here is not an insurer; and the plaintiffs expressly disclaim reliance on the doctrine of res ipsa loquitur. They do, however, rely

upon an inference of negligence. While they do not allege any specific negligence in the manufacture of the engine, they aver that the engine exploded without any negligence on the part of any person other than the defendant as a part of the efficient cause. The argument, necessarily, runs in this way: A carefully constructed internal combustion engine, properly managed and cared for, does not ordinarily explode; the engine was properly managed and cared for while in the hands of the immediate and subsequent vendees; the engine exploded; therefore, the jury may infer negligence on the part of the defendant in the manufacture of the engine. This reasoning was thought to be specious in *Slack v. Premier-Pabst Corporation,* 1 *Terry* (40 *Del.*) 97, 5 A. 2d 516. It is equally unacceptable here.

*Dillingham v. Chevrolet Motor Co., supra,* bears some analogy to the instant case. On demurrer it was held that the specific allegations in the complaint that the automobile was improperly designed and constructed were mere conclusions; and that the only evidence of defective brakes was the accident itself. The Court observed that the complainant showed that the car had given satisfactory service for nine months, and that if all the facts alleged were proved no conclusion could be reached by a jury except from pure speculation.

The declaration is defective both in form and substance. No cause of action is disclosed; and the demurrer is sustained.