## HEICHEL v. LIMA–HAMILTON CORP.

Civ. A. No. 6401.

United States District Court
N. D. Ohio, W. D.
June 29, 1951.

William A. Finn, Toledo, Ohio, Pugliese, Troiano & Pugliese, Pittsburgh, Pa., for plaintiff.

Bentley, Neville, Cory & Boesel, Lima, Ohio, for defendant.

KLOEB, District Judge.

This matter is before the Court on motion of defendant for summary judgment, together with motion of plaintiff for dismissal of motion for summary judgment because the defendant has raised issues of fact in its pleadings, brief and affidavit and has abandoned its motion for summary judgment.

The petition alleges that plaintiff, on September 23, 1948, was employed as an oiler by one Frank W. Albert, who conducted a strip coal mining operation in the State of Pennsylvania, and that plaintiff was injured by being thrown against a revolving, unguarded shaft and cog wheel on a strip mining shovel manufactured by defendant and sold to plaintiff's employer in the early part of 1948.

The question presented is whether or not on the basis of the allegations of the petition and the admitted facts a cause of action is stated in favor of the plaintiff, or whether the defendant is entitled to summary judgment.

The issues raised by the pleadings are:

1. Was the defendant negligent in failing to install a guard for the revolving mechanism?

2. If so, was the defendant's negligence the direct and proximate cause of plaintiff's injuries, or was it superseded by intervening negligence of plaintiff's employer, which relieves the defendant from liability to plaintiff as a matter of law?

3. Was the plaintiff guilty of contributory negligence as a matter of law which would bar a recovery against the defendant?

Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., with reference to summary judgment provides:

"(b) A party against whom a claim, * * * is asserted * * * may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law. * * * *" (Emphasis added.)

This rule was construed in Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016, and the Court there said, at page 1018: "It is now well settled that summary judgment may be entered for either party if the pleadings, depositions, admissions on file and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Civil Procedure Rule 56. Stated conversely, a substantial dispute as to a material fact forecloses summary judbment. McElwain v. Wickwire Spencer Steel Co., 2 Cir., 1942, 126 F.2d 210; Miller v. Miller, 1941, 74 App.D.C. 216, 122 F.2d 209; Whitaker v. Coleman, 5 Cir., 1940, 115 F.2d 305. Upon a motion for a summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. Ramsouer v. Midland Valley R. Co., D.C.Ark., 1942, 44 F.Supp. 523. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Weisser v. Mursam Shoe Corporation, 2 Cir., 1942, 127 F.2d 344 [145 A.L.R. 467]."

The motions have been submitted on affidavits and deposition. There is attached to the motion by defendant the affidavit of C. W. Bruening, an employee of the engineering department of the defendant, who installed the revolving mechanism and whose negligence, if any, in failing to install the guard which had been provided

is chargeable to the defendant. There is attached to the plaintiff's motion the affidavit of the plaintiff in reply. The deposition of Mr. Bruening was also taken by the plaintiff.

In the affidavit of Mr. Bruening, it is stated that his duties consisted of servicing and supervising experimental equipment in use by customers of defendant; that the defendant designed a metal box guard to be installed over the shaft, pulley wheel, bracket and pump valley of the said shovel; that, on September 5, 6 and 7, 1948, he supervised and assisted the employees of said Albert in the installation of the jack shaft, pulley wheel, bracket, extension shaft and new oil pump; that said pump did not work satisfactorily, and that the original pump was reconnected; that while the shovel was in operation the shaft revolved rapidly, and that the pulley wheel, bracket and extension shaft projected about 4½ inches into the walkway on said shovel and was located about 38 inches above the floor; that the said installation was completed and the original pump reconnected about 7 o'clock P.M. on September 7, 1948; that he was then advised by one Bob Simonds, an employee of said Albert, that it was too late to complete the installation of the guard that night, and that said Albert's employees would complete the installation of the metal guard the next morning; that it was only necessary in order to complete the installation of the guard to drill three holes in the wall of the shovel and to bolt the metal guard thereto in order to safeguard said pulley wheel, bracket and extension shaft; that he thereupon left the job and returned to Lima; that said pulley wheel, bracket and extension shaft, in its location on the shovel, was open and exposed to view, and the fact that the same revolved rapidly while the shovel was in operation was readily observable by any one working on the shovel.

The deposition of Mr. Bruening was taken by the plaintiff on February 2, 1951. He testified that the shovel in question was sold to Mr. Albert, and that the witness went to Philipsburg, Pennsylvania, on September 4, 1948, for the purpose of doing some work on the machine, under orders from his superiors in the engineering department. At that time he put on a plunger type oil pump in place of a rotary type pump which had not been operating. He described the changes he made in putting on the substituted pump and, because that did not work, replacing the original pump, and stated as to why he did not put on the guard (pages 6 and 7 of the deposition):

"* * * In finding that, we had to remove the belt from the pump and apply the old plunger pump so that the machine could go back into operation and, at that time, it was getting kind of late. *Went to put a guard up; asked the man if he had an electric motor so we could drill some small holes. Said yeah, they had one but didn't have it up there, so then he said, 'Well, we'll have to get it'.* That was about seven o'clock at night—

"Mr. Boesel: On what date? A. On September seventh, p.m. *I asked them if they would put the guard on when they got the electric drill. I understood he was going to put it on. He told me, he said he would get the drill and put it on the next morning.*

"Q. Who told you that? A. Mr. Simmons, Bob Simmons. I think that is the name. It has been quite a while, and since that time, he denies that he has said that, that he would put it on." (Emphasis added.)

He testified he worked on the actual installation and was responsible for the supervision of the work and directed the way it should be done. He said that, as the machine was originally equipped, it did not need a guard because the revolving machinery was down underneath. He testified that he thought that Mr. Simond's position in the employ of Mr. Albert was that of mechanic, and that one Ed Hewitt was the foreman on the job. As to the conditions when he left around 7 o'clock P.M. on September 7, 1948, he testified (pages 10 and 11 of the deposition):

"Q. *On September 7th, around seven o'clock in the evening when you left, in what condition did you leave the modifica-*

tion, that is, the change from the Bowsher plunger system to the Bowsher rotary system? A. We had the belt off of the pump from the driveshaft off, and the shaft was out there but *we didn't have the guard on it*, but at that time it didn't look too dangerous unless somebody deliberately crawled up on it, in my estimation.

"Q. It was an open— A. Shaft, yes, but there also was a stationary point sticking out at the end of it, with a hose running up to it.

"Q. The cogs were open, were they not? A. No, the cogs were not open, no sir. There were no cogs open at all. All it was was a little bracket came out, like this, (indicating), shaped similar to that (indicating). Comes out like that, and that, and in the end of this, there is a rotary seal and it hangs down and this bracket was about that wide and about that long (indicating), across these parts here, and bolted to a round pulley.

"Q. *There was no guard over the cog wheel?* A. *There was no cog wheel there. There was no guard over the pulley wheel.*

"Q. *The pulley wheel?* A. *That is right.*

"Q. *On September the seventh, 1948, when you left machine # 3504, was there a wheel with a bracket attached to it, extending into the aisle of the shovel?* A. *Yes, sir."* (Emphasis added.)

The affidavit of plaintiff admits that, in the Spring of 1948, the defendant sold the coal stripping shovel to his employer, Frank W. Albert; that the oil pump with which it was originally equipped did not work satisfactorily; that the defendant designed a jack shaft, pulley, bracket and extension shaft, for the purpose of being installed on said shovel, and designed a metal guard to be installed over the extension shaft, pulley wheel, bracket and pump pulley; that C. W. Bruening, an employee of defendant, did supervise the installation of the same for defendant; that the said oil pump did not operate satisfactorily; that, while the said shovel was in operation, said pulley, bracket and extension shaft, which extended about 4½ inches above the

walkway of the shovel, and was located about 38 inches above the floor of said walkway, revolved rapidly; that at 7 o'clock P.M. on September 7, 1948, the installation was not completed because the guard was not placed on the wheel. *The plaintiff in his affidavit denied that Bob Simonds, an employee of said Albert, advised Mr. Bruening that it was then too late to complete the installation of the guard that night, but that said Albert's employees would complete the installation of the guard the next morning. He states that Mr. Bruening was handed the guard and directed to place it on the wheel but refused to do so, and said he would be back later to do so;* that the plaintiff continued to work regularly on the said shovel from September 8, until September 23, 1948, when he was injured. Plaintiff further states in his affidavit that he did not appreciate the risk of the unguarded wheel; that he, as well as other employees, had previously used the aisle in the shovel without accident.

The only substantial conflict in the statements of Mr. Bruening and the plaintiff, as shown by the foregoing, is with reference to the alleged conversation between Mr. Bruening and one Bob Simonds, a mechanic in the employ of the owner of the shovel, with regard to the installation of the guard.

Based upon the admissions in the pleadings, the foregoing statements and the briefs of counsel, we take these facts to be undisputed:

(1) In the early part of 1948, defendant sold to one Frank W. Albert, plaintiff's employer, the shovel for strip mining coal on which the plaintiff was injured.

(2) The oil system on the shovel did not operate properly, and in the early part of September, 1948, the defendant sent one C. W. Bruening, an employee of its engineering department, to the location of the shovel in the State of Pennsylvania, to remedy the difficulty. At that time the revolving mechanism connected with the oil pump was underneath the floor and unexposed so that a guard was not needed.

(3) Mr. Bruening installed a jack shaft, pulley wheel, bracket and extension shaft, which extended into the aisle or walkway on the shovel about 4½ inches and about 38 inches above the floor, which revolved rapidly while the shovel was in operation.

(4) Mr. Bruening brought with him a metal guard provided by defendant to cover the exposed mechanism, which was intended to be fastened to the shovel by bolts fitted into two or three holes to be drilled into the wall of the shovel, but left the job about 7 o'clock P.M. on September 7, 1948, with the guard unattached, and the pulley wheel, bracket and extension shaft unguarded.

(5) The plaintiff worked on the shovel from September 7, until September 23, 1948, when he was injured by coming in contact with the unguarded revolving pulley wheel, bracket and extension shaft.

(6) The guard was not placed in position until after the accident happened which caused the injuries to the plaintiff.

The defendant contends in support of its motion that there is no liability on its part as a matter of law, in view of the undisputed facts, and that summary judgment should be entered for the defendant on the grounds:

(1) There was no negligence on the part of defendant in that the danger was not reasonably foreseeable, and, hence, it owed no duty to the plaintiff;

(2) The Pennsylvania Safety Statute is limited in its application to employers, and, hence, the defendant cannot be charged with negligence because of an alleged violation of this statute;

(3) The act of defendant's employee (Mr. Bruening), if negligent, was not the proximate cause of plaintiff's injuries, because of an intervening conscious agency (plaintiff's employer), who was guilty of negligence as a matter of law in failing to properly safeguard the pulley wheel and shaft in violation of the provisions of Title 43, Sec. 25–2 Purdon's Pennsylvania Statutes, in that he should have foreseen the danger and installed the guard, but failed to do so;

(4) The plaintiff himself was guilty of contributory negligence in continuing to work on the shovel with the shaft exposed for a period of more than two weeks, under such circumstances that the plaintiff could or should have known of the dangerous condition.

I.

As to the first contention on the part of defendant, that there was no negligence on its part, as a matter of law, on the admitted facts, because the danger to the plaintiff was not reasonably foreseeable, and, hence, it owed no duty to the plaintiff.

The fact that the defendant designed and supplied the guard, and that it was the intention of Mr. Bruening to have it attached before leaving the job, indicates that the defendant regarded the guarding of the revolving mechanism involved in making the change as part of its obligation as the manufacturer of the shovel. We do not understand that the defendant disputes this, for nowhere in its brief does it urge that it had no duty to supply the guard or to attach it after the completion of its work.

In the late case of Vrooman v. Beech Aircraft Corp., 10 Cir., 1950, 183 F.2d 479, 481, the Court states the law as follows:

"* * * The question then is whether the airplane was defectively made or repaired, and if so whether the manufacturer or repairer had knowledge of the probable danger of such defects and could have reasonably foreseen or anticipated the consequent harm to this appellant. This question may be one of law or fact when the issues are made up, and the evidence adduced. The danger may not have been sufficiently probable; the injury may have been too remote from the risk to be actionable; intervening or superseding agencies may have insulated the manufacturer or repairer's liability. See Gorman v. Murphy Diesel Co., 3 Terry, 149, 42 Del. 149, 29 A.2d 145. But, these are questions which turn upon the facts. We decide the question on the allegations of the complaint.

"While the airplane manufactured or repaired is not an inherently dangerous vehicle, it was designed, manufactured and repaired to fly in the air, and unless it is made

or repaired without mechanical defects it becomes a thing of danger to all in the range of probable foreseeability. It is not unreasonable to anticipate or foresee that the plane would be flown by someone other than the immediate purchaser and owner. Indeed, under this complaint it is apparent that appellee knew, or had reason to know, that the plane would be flown by this particular appellant, and that he relied upon Beech's inspection and repairs. It follows that under the allegations of the complaint the appellant was within the range of appellee's duty to exercise ordinary care in the manufacture or repair of the plane. The complaint alleges a breach of that duty and, therefore, states a cause of action upon which relief can be granted." 183 F.2d at pages 481, 482.

A recent case in this Circuit is O'Donnell v. Geneva Metal Wheel Co., 6 Cir., 1950, 183 F.2d 733. This was an action by a service station attendant against the manufacturer of a wheelbarrow for injuries sustained when a wheel disintegrated during inflation of tire because of alleged defective construction of wheel. Motion for directed verdict was granted and judgment entered for defendant, which was reversed. The Court followed the rule in the MacPherson case (MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696) and said, 183 F.2d at page 738: " * * * The rule thus announced is followed by this court and the majority of federal and state courts. Barrett Co. v. Bobal, 6 Cir., 74 F. 2d 406; Goullon v. Ford Motor Co., 6 Cir., 44 F.2d 310. See Carter v. Yardley & Co., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559. The foregoing doctrine is here applicable. If the wheel in question were negligently made by appellee, and, as a result, was violently ruptured, causing the accident in this case, appellee would be liable in damages."

Aside from the question of the negligence of the defendant under general law, it would seem that, assuming the statute is applicable to the shovel in this case, defendant might also be found negligent under the provisions of the statutes of Pennsylvania. Sec. 25-6 of Purdon's Pennsylvania Statutes, Annotated, Title 43, Ch. 1, relating to removal and replacement of guards on machinery, reads as follows: "No person shall remove or make ineffective any safeguard, safety appliance or device attached to machinery except for the purpose of immediately making repairs or adjustments, and any person or persons who remove or make ineffective any such safeguard, safety appliance or device for repairs or adjustments shall replace the same immediately upon the completion of such repairs or adjustments."

At the time Mr. Bruening, as the agent of defendant, started to make the changes in the shovel, the revolving mechanism was apparently underneath the floor or body of the shovel and no further guard was needed, as he stated. It may perhaps reasonably be assumed that by cutting out a part of the shovel to put the new oil pump in place, Mr. Bruening made "ineffective" what had previously guarded the revolving mechanism attached to the pump on the shovel, and that his failure to replace such safeguard was a violation of the statute.

Defendant quotes and relies upon Sec. 388, Restatement of the Law of Torts. This section relates to the liability of the supplier of a chattel "known to be dangerous for intended use". Such was the threshing rig involved in the case of Huset v. J. I. Case Threshing Machine Co., 8 Cir., 1903, 120 F. 865, 61 L.R.A. 303, cited by defendant, which seems inapplicable on the facts. In the case before us the shovel as originally manufactured and furnished to the employer of plaintiff apparently was not dangerous for intended use, because the revolving mechanism connected with the oil pump was underneath or covered and an employee working on the shovel was not in danger therefrom.

Defendant also cites, on the question of negligence of defendant, the case of Stevens v. Allis-Chalmers Mfg. Co., 151 Kan. 638, 100 P.2d 723, but it would seem that this case is not in point on this question, and that its application, if any, is to the question of the alleged contributory negligence of plaintiff.

We are unable to find, as a matter of law, on the admitted facts, that the defendant was not negligent in failing to place the guard.

## II.

On the point urged by defendant that there was no violation of statutory duty on the part of the defendant because of its alleged violation of the Pennsylvania statutes requiring guarding of machinery by the owner or lessee, Purdon's Pennsylvania Statutes, Annotated, Tit. 43, Ch. 1, §§ 25–1, 25–2, 25–2(c), on the ground that they have no application to defendant and, hence, the defendant was under no duty to plaintiff by reason of these statutes, it would seem that this contention is well taken, in that the statutes referred to appear to be designed to apply to the owner, lessee or employer covered by the statutes, and do not specifically cover a manufacturer or supplier who makes, rebuilds or repairs a chattel. No case in point to the contrary has been cited by counsel for plaintiff.

## III.

Assuming the defendant was negligent, through its employee, Mr. Bruening, in failing to see to it that the guard he brought with him was placed on the shovel, was such negligence the proximate cause of the injury to plaintiff or was it superseded by an intervening cause, i. e., the negligence of plaintiff's employer in violating his duty in failing to properly safeguard the exposed pulley wheel, shaft and bracket, as required by the Pennsylvania Safety Statutes?

Section 25–2(b), Purdon's Pennsylvania Statutes, Annotated, Tit. 43, Ch. 1, provides, with reference to the duty of the employer: "All belts, pulleys, gears, chains, sprockets, shafting, and other mechanical power transmission apparatus, stationary engines, electrical equipment and apparatus shall be properly guarded to protect workers from injury."

The plaintiff worked on the shovel from September 8, 1948, the day after Mr. Bruening left the job, until September 23, 1948, when the accident happened, a period of fifteen days, without the guard being put in place. During that time the plaintiff's employer would apparently be chargeable with constructive notice of the absence of the guard and that the shovel was not in this respect "properly guarded to protect workers from injury".

The subject would also appear to be covered by Section 25–2(c) of the same Statutes: "All cranes, hoists, steam or electric shovels, plant railroads, and other apparatus or devices used for moving, lifting, lowering, and transporting material shall be designed, constructed, equipped, and operated as to eliminate dangerous conditions."

That the unguarded wheel, shaft and bracket extending into the walkway of the shovel was a dangerous condition is not disputed. As well said in the case of Fegley v. Lycoming Rubber Co., 231 Pa. 446, 80 A. 870, 871: " * * * The common experience of mankind has shown the danger to be apprehended from unguarded machinery, and especially that from uncovered, revolving cogwheels, and has made clear the duty of protecting from that danger, those whose duties bring them in proximity to such machinery. The statute has merely crystallized the demands of ordinary prudence in requiring that cogs, gearing, and other machinery shall be covered. An injury from machinery, open and uncovered, is not liable to occur, without the concurrence of some accident or unexpected event, such as a slip or a miscalculated move. And it is for the very reason that such things may in numberless unexpected ways plunge a workman into danger, without fault of his own, that prudence requires proper safeguards to be supplied to prevent accidental contact with moving machinery. To hold that a prior slip or an accidental movement which brings an unfortunate workman into contact with uncovered cogwheels is to be considered as the proximate cause of the resulting injury would be to practically nullify the provisions of the law made to protect him against such risks."

It is the contention of the defendant that the act of plaintiff's employer in permitting the shovel to operate for more than two weeks, knowing that the exposed shaft was left unguarded, constituted an intervening act which was in fact the proximate cause of the injury and which effectively relieved the defendant here from liability.

Among the cases relied upon and cited by defendant on this subject are the following Pennsylvania cases:

Finkbeiner v. Solomon, 1909, 225 Pa. 333, 74 A. 170, 24 L.R.A.,N.S., 1257. In this case defendant had left dynamite cap in barn which he sold to plaintiff. Plaintiff's son was injured by explosion of cap. The court held the proximate cause of accident was the act of a third person, another child who found the cap. This decision was commented upon in 24 L.R.A.,N.S., 1257, the annotator saying the finding that the act of an irresponsible child can be an intervening cause was clearly in conflict with the Iamurri case (Iamurri v. Saginaw City Gas Co.), 148 Mich. 27, 111 N.W. 884, where act by child was declared irresponsible.

Kline v. Moyer, 325 Pa. 357, 191 A. 43, 46, 111 A.L.R. 406, in which defendant, in violation of statute, parked his truck with all four wheels on the highway. In attempting to pass the truck, plaintiff's car was struck by a co-defendant who had turned to the left to go around the truck and collided with plaintiff's car. The Court permitted a judgment against the truck owner to stand, but said: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, *by an independent act of negligence,* brings about an accident, the first tort-feasor, is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." Assuming the decision was correct on the facts, it does not seem to us applicable to the case at bar, because here the connection between the defendant's negligence and the accident to the plaintiff was not broken by an independent efficient cause.

Wissman v. General Tire Co., 1937, 327 Pa. 215, 192 A. 633, in which defendant sold and installed new tires on a customer's truck. One of the rims was defective, and the defendant notified the driver of the truck of the defect. Several days later the truck was taken to a motor company for adjustment of the brakes, and while removing the wheel with the defective rim the defective rim burst and injured the plaintiff. The Court held that notifying the customer (the driver of the truck) of the defective rim relieved the defendant from liability, and that the driver became an intervening agent whose negligence was the proximate cause of the injury. On the facts, this case seems clearly distinguishable from the case at bar, because there was no original negligence on the part of the defendant in installing the tire it sold and installed on the defective rim, of which it gave notice to the driver.

Rapczynski v. W. T. Cowan, Inc., 1940, 138 Pa.Super. 392, 10 A.2d 810, in which defendant left a tractor parked at the curb with the ignition keys in the lock, but with the brakes set and the ignition turned off. A 13 year old boy started the tractor and plaintiff's decedent was killed. The Court held that the act of the 13 year old boy was the proximate cause of the injury to plaintiff's son, and that the fact that the keys were left in the lock of the tractor was not sufficient of itself to show negligence on the part of the defendant. This case does not seem in point on the facts. The intervening and proximate cause was clearly the act of the 13 year old boy in starting the tractor. Without that nothing would have happened.

Stone v. City of Philadelphia, 302 Pa. 340, 153 A. 550, 551, and Hoffman v. McKeesport, 303 Pa. 548, 154 A. 925. In both of these cases the Court held that the city was not liable because of a hole in the street into which a motor vehicle was driven, causing an accident and injuries to the plaintiff, for the reason that the negligence of the driver was the proximate cause of the accident. In the Stone case the Court quoted from Wharton's Law of Negligence as follows (Sec. 134, p. 130): "I am negligent on a particular subject-matter. Another person, *moving independently,* comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a nonconductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured. I may be liable to him for my negligence in getting him into difficulty, but I am not liable to others for the negligence which he alone was the cause of making operative". (Emphasis added.) Neither of the above cases

seems in point on the facts, because it was the new, active and independent negligence of the driver which caused the accident.

In Shearman & Redfield on Negligence, Sec. 37, p. 99, it is said, with reference to intervening cause: "The connection between the defendant's negligence and the plaintiff's injury may be broken by an intervening cause. Intervening cause is merely proximate cause flowing from a source not connected with the party sought to be charged." P. 101: "If the force which caused the injury is put in operation or motion by what is the negligence of the defendant, *and that force or motion is still in progress or operation and has not lost. its identity and continuity as such when the injury occurs,* then the negligence which puts the injurious force in operation is the proximate cause". (Emphasis added.)

It would seem that the law above quoted from page 101 is particularly applicable to the admitted facts in this case. This is not a situation where the negligence of the defendant created a situation which was harmless unless something further occurred, and which was made dangerous by the operation of some new intervening force which made the situation potentially dangerous. Restatement of the Law of Torts, Sec. 441 (1) (b).

In Diehl v. Fidelity-Philadelphia Trust Co., 1946, 159 Pa.Super. 513, 49 A.2d 190, 192, the Court quoted, with approval, Restatement of Torts, Sec. 452: "Failure of a third person to perform a duty owing to another to protect him from harm threatened by the actor's negligent conduct is not a superseding cause of the other's harm."

It seems to us that the cases relied upon by the defendant, such as the Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S.W.2d 840, 852, 164 A.L.R. 364, do not afford a precedent because there was not a continuity of the defendant's negligence but a break in the chain of causation. In this case an automobile hood latch was defective as originally manufactured; the defendant supplied its dealers with auxiliary catches to remedy the trouble; the dealer offered one of these catches to a salesman, who neglected to install it on his car which he afterwards sold to a third person, whose passenger was injured when the defective latch permitted the hood to fly up, obscured the view of the driver and resulted in an accident. The Court there held that the negligence of the salesman was the proximate cause of the injury. In the case before us, the obligation of the defendant was not performed by furnishing the guard, but its duty extended to putting it in place.

■ Based upon the foregoing law, we find ourselves unable to come to the conclusion that, as a matter of law, on the admitted facts, the defendant is entitled to a summary judgment on the ground that the act of plaintiff's employer in permitting the shovel to operate for more than two weeks, with the shaft left unguarded, constituted an intervening act which was the proximate cause of the injury and relieved the defendant of liability.

IV.

■ It is the contention of defendant that plaintiff was guilty of contributory negligence, as a matter of law, and hence cannot recover against it for his injuries to which his own lack of care proximately contributed.

On this subject the answer alleges that the plaintiff—"was fully familiar with the stripping shovel described in the complaint herein, including the operation thereof, and was fully and completely familiar with the parts thereof, and was fully and completely familiar with the condition of said stripping shovel on the 23rd day of September, 1948, and had been so familiar with its said condition for a long time prior thereto. Said defendant further alleges and avers that the acts, conduct and want of care of said plaintiff, Robert G. Heichel, on the 23rd day of September, 1948, proximately caused and contributed to the accident suffered by said Robert G. Heichel on said date, and his resultant injuries, if any."

The questions of how the plaintiff came in contact with the unguarded shaft or whether plaintiff committed an act of negligence which caused him to come in contact with it, are not before the court, on the issues raised or the admitted facts. No specific act of negligence on the part of the plaintiff in this respect is charged. The ar-

gument of defendant on this subject states that the plaintiff "was guilty of contributory negligence in continuing to work on the shovel with the shaft exposed, for a period of more than two weeks, under such circumstances that the plaintiff could or should have known of the dangerous condition". This charge seems to amount to a defense of assumption of risk rather than one of contributory negligence, although the terms are often confused.

The defense of contributory negligence was denied an employer under the Pennsylvania Workmen's Compensation Act, 77 P. S. § 1 et seq. The Pennsylvania cases cited by defendant which were decided prior to that time hold that such a defense was available to employers, even though the statute requiring employers to safeguard machinery was then in effect. None of these cases seem to have been actions against third parties, involving unguarded machines.

The law of Pennsylvania as to the application of the doctrine of assumption of risk in a case where there was a violation of statutory duty to guard machinery was well stated in the case of Fegley v. Lycoming Rubber Co., supra. In the case of Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 71–72, 63 S.Ct. 444, 453, 87 L.Ed. 610. Mr. Justice Frankfurter, in a concurring opinion, stated: " 'Assumption of risk' by an employee may be a way of expressing the conclusion that he has been guilty of contributory negligence. But an employee cannot be charged with contributory negligence simply because he 'assumed the risk'; the inquiry is, did his conduct depart from that of a reasonably prudent employee in his situation? As Mr. Justice Holmes admonished us in the Schlemmer case [Schlemmer v. Buffalo, R. & P. R. Co., 205 U.S. 1, 12–13, 27 S.Ct. 407, 51 L. Ed. 681], 'unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of the risk under another name'." This case cited in footnote, 318 U.S. at page 61, 63 S.Ct. at page 448, Narramore v. Cleveland, C. C. & St. L. Ry. Co., 6 Cir., 1899, 96 F. 298, 48 L.R.A. 68.

As said on this subject, in the case of Narramore v. Cleveland, C. C. & St. L. Ry.

Co., 6 Cir., 1899, 96 F. 298, 48 L.R.A. 68, cited in footnote in 318 U.S. 61, 63 S.Ct. 448, on this point:

" * * * Assumption of risk is in such cases the acquiescence of an ordinarily prudent man in a known danger, the risk of which he assumes by contract. *Contributory negligence in such cases is that action or nonaction in disregard of personal safety by one who, treating the known danger as a condition, acts with respect to it without due care of its consequences.* * * *

"In Hesse v. [Columbus S. & H.] Railroad Co., 58 Ohio St. 167, 169, 50 N.E. [354], 355, Judge Shauck, speaking for the supreme court of Ohio, said:

" 'Acquiescence with knowledge is not synonymous with contributory negligence. *One having full knowledge of defects in machinery with which he is employed may yet use the utmost care to avert the dangers which they threaten.*'

" * * * Assumption of risk and contributory negligence approximate where the danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom. *But where the danger, though present and appreciated, is one which many men are in the habit of assuming, and which prudent men who must earn a living are willing to assume for extra compensation, one who assumes the risk cannot be said to be guilty of contributory negligence if, having in view the risk of danger assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences.* One who does not use such care, and who, by reason thereof, suffers injury, is guilty of contributory negligence, and cannot recover, because he, and not the master, causes the injury, or because they jointly cause it. * * *'" 96 F. at pages 304, 305. (Emphasis added.)

We do not know, of course, what the evidence bearing upon the contributory negligence of plaintiff may develop as to the facts of just how the accident happened. The plaintiff alleges that, while exercising due care, a sudden, violent and unexpected lurch of the shovel threw him against the unguarded shaft or wheel, which the defendant denies in its answer.

We conclude that we are unable to find, as a matter of law, on the admitted facts that the plaintiff was guilty of contributory negligence which would bar a recovery against the defendant.

The motion of defendant for summary judgment will be overruled. An order is prepared accordingly.