**Fred SOLOMON, Plaintiff,**

v.

**The WHITE MOTOR COMPANY, Defendant.**

**Civ. A. No. 12736.**

United States District Court
W. D. Pennsylvania.

July 18, 1957.

918

Donald Hankey, New Kensington, Pa., for plaintiff.

Pringle, Bredin, & Martin, Pittsburgh, Pa. (John R. Bredin, Pittsburgh, Pa.), for defendant.

McILVAINE, District Judge.

■ At the conclusion of the plaintiff's case in respect to liability, the defendant had filed a motion for a directed verdict. When such a motion is filed:

"* * * we are concerned solely with whether the testimony on behalf of the plaintiff, and reasonable inference to be drawn from it in the light most favorable to the plaintiff, made out a prima facie case allowing the plaintiff to have a jury pass upon his cause of action." Gold v. Groves, 3 Cir., 1950, 182 F.2d 767, 769.

The plaintiff alleges in his complaint as follows:

"Seventh: The plaintiff avers that The White Motor Company constructed and built the said tractor hereinabove referred to, and especially the fly wheel, fly wheel casing, housing and transmission, which was designed and constructed so defectively that it was unfit for use as a Tractor on the Highways, and by reason of said unfitness, Fred Solomon, the plaintiff herein, and as a direct result thereof, was injured severely and permanently as hereinafter set forth.

"Eighth: The plaintiff avers that the fly wheel gave way at the time and occurrence hereinbefore mentioned due to the defective steel or the steel alloy used in the manufacture of said fly wheel, causing the fly wheel to let loose and go through the housing, and causing the damage hereinbefore mentioned, and that the said break in the fly wheel was caused by defective steel and defective workmanship.

"Ninth: The negligence of the White Motor Company consists in the following:

"(a) In manufacturing said fly wheel in such a manner that it was unfit for use by the plaintiff.

"(b) In manufacturing said fly wheel with defective steel, or steel of insufficient strength for the purpose for which it was intended.

"(c) In constructing said fly wheel of defective material.

"(d) In manufacturing said fly wheel which was defective in workmanship.

"(e) In improperly manufacturing said fly wheel.

"(f) In not having inspected it properly after they had manufactured the fly wheel.

"(g) In having represented it as fit for the purpose for which it was used by the plaintiff at the time of his accident.

"(h) That the defendant then and there negligently failed to observe towards the plaintiff such care as the circumstances demanded.

"(i) In inducing the plaintiff and others to use and operate the said tractor by making false representations as to its perfection and safety upon which the plaintiff, Fred Solomon, had the right to rely, and did rely upon.

"(j) In selling the said tractor which was inherently dangerous in that it was constructed of defective material and was defective in workmanship."

Viewing the evidence produced at the trial most favorable to the plaintiff, the evidence simply shows that J. P. Sipe was the owner of the truck in question, and that he leased it to Carlton Schneider by whom the plaintiff was employed and for whom the plaintiff drove this truck.

It appears that the truck was at least 5 years old at the time of the accident on October 10, 1952. Some 3 or 4 years prior to the accident it appeared that the truck was damaged by fire and at that time it was purchased by Mr. Sipe. He replaced the cab, the motor, and certain parts of the truck. The truck prior to the accident had probably been run between 100,000 and 200,000 miles, and subsequent to the accident had run another 100,000 to 200,000 miles. There is no evidence that there had been any prior trouble with the fly wheel, nor was there any evidence that the motor and fly wheel were the same motor and fly wheel that were originally installed in the truck by the defendant. There was no evidence to prove the allegation in the sev-enth paragraph of the plaintiff's complaint that the fly wheel was designed and constructed so defectively that it was unfit for use as a tractor, nor was there any evidence to support the allegation in the eighth paragraph of the complaint that the fly wheel gave way at the time of the occurrence on October 10, due to the defective steel or steel alloy used in the manufacture of the fly wheel, nor any evidence to support the allegations of negligence contained in the ninth paragraph of the complaint.

 It appears that in this case we must follow the law of Pennsylvania and our Court of Appeals in Mannsz v. Macwhyte Co., 3 Cir., 1946, 155 F.2d 445, 450, indicating that the law of Pennsylvania would be in accord with the Restatement of Torts § 395 which section is as follows:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

 As we have previously pointed out there is no evidence whatsoever that the manufacturer, The White Motor Company, failed to exercise reasonable care in the manufacture of the chattel in question. It also appears that in cases in which the chattel has been used for a long period of time, such as the truck here having been used for a period of 5 years, there is a conclusive denial and contradiction of any allegation that the machine was unfit for use on the highway or that defective steel or workmanship was used or that it involved an unreasonable risk of bodily harm.

In Gorman v. Murphy Diesel Co., 1942, 3 Terry 149, 42 Del. 149, 29 A.2d 145,

920

the court pointed out that the time when the accident and resulting injury occurred, whether soon or long after the sale and delivery of the article causing the injury, is manifestly of importance upon the question of its known imminently dangerous quality when sold and delivered.

In Ford Motor Co. v. Wolber, 7 Cir., 1929, 32 F.2d 18, the court there pointed out that the manufacturer was not negligent in the design and construction of the machine for it had been used safely for two years prior to the time of the injury.

In Lynch v. International Harvester Co., 10 Cir., 1932, 60 F.2d 223, the court there denied recovery when a covering on a threshing machine broke after 5 years of use because the court felt that the use of the machine for 5 years was a conclusive denial and contradiction of the allegations that the machine was imminently dangerous to life and limb when it was delivered.

In Schindley v. Allen-Sherman-Hoff Co., 6 Cir., 1946, 157 F.2d 102, the United States Court of Appeals for the Sixth Circuit followed the reasoning of the Court of Appeals in the Tenth Circuit in the Lynch case and cited its reasoning with approval.

In Loop v. Litchfield, 42 N.Y. 351, the court there pointed out that the risk could hardly have been an imminent one where a machine had been in operation for 5 years before a balance wheel on a circular saw burst.

In MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A.1916F, 696, the court pointed out that they were dealing "* * * with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers." In this case the truck or tractor when manufactured was used by its original purchaser for some 100,000 to 200,000 miles until the truck was involved in a fire, after which the present owner purchased it and replaced the motor and used it for a period of 3 to 4 additional years from the time it was damaged by the fire and for at least 100,000 to 200,000 additional miles. It also must be obvious that the owner of the truck did inspect it when he replaced the motor and the plaintiff's own testimony is that the motor in this truck must have been rebuilt every 75,000 miles.

We do not have a situation here such as in the MacPherson case. The truck was used between 200,000 and 400,000 miles safely. There is no evidence as to the cause of the breaking of the fly wheel, nor is there any evidence to substantiate the allegations in the plaintiff's complaint.

The plaintiff having failed to establish that the defendant failed to exercise reasonable care in the manufacture of the fly wheel cannot recover in this action, and the defendant's motion for a directed verdict is granted.