ELECTRONIC ASSOCIATES, INC. *v.* AUTOMATIC EQUIPMENT DEVELOPMENT CORPORATION ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued May 14—decision released July 21, 1981

*Michael P. Fuchs,* of the New York bar, with whom was *Pasquale Young,* for the appellant (plaintiff).

*Christine S. Vertefeuille,* for the appellee (named defendant).

*Richard F. Connors,* for the appellee (defendant Alfred Merritt).

*Socrates H. Mihalakos,* for the appellee (defendant James J. Johnston).

BOGDANSKI, C. J.   The plaintiff alleges that the defendants breached a fiduciary duty not to solicit the plaintiff's employees to leave its employ and work for the defendant Automatic Equipment Development Corporation (AED).[1]   The trial court found that the plaintiff failed to sustain its burden of proof.   We agree.

In April, 1973, the defendant Alfred Merritt was the president of United States Electronics Corporation (USE), a wholly owned subsidiary of the plaintiff, Electronic Associates, Inc., a company with annual gross sales of forty million dollars.   He learned from the defendant James Johnston, then the president of AED, of the existence of the cable recovery business.[2]   Johnston had invented various items which made it possible to refurbish used telephone cable on a production line, with the use of unskilled labor.   AED had already secured active accounts to refurbish cables for operating companies in the Bell system.   Except for Merritt, none of the plaintiff's employees or officers knew any-

---

[1] The plaintiff's original complaint contained thirteen counts.   It has abandoned all except the thirteenth count.

[2] At the end of May, 1973, USE dissolved itself and became a division of the plaintiff.   Merritt remained in charge of the operations of USE, but never became an officer of the plaintiff.

thing about such a business, had ever engaged in it before, or had any knowledge at that time of contracts for sales or competitors in it. Merritt's knowledge came exclusively from Johnston. At a meeting of the plaintiff's staff in April, 1973, Merritt indicated that a business opportunity existed if the plaintiff could combine with AED.

From April, 1973 through August, 1973, the plaintiff and AED engaged in negotiations, discussions, and planning to enter a joint venture. Merritt represented the plaintiff during the negotiations. The discussions envisioned a venture in which AED would provide know-how, supplies, training of personnel, service, and sales contracts in exchange for the plaintiff's administrative expertise. AED insisted that it receive from the plaintiff an initial cash payment of at least $50,000 under any arrangement between the two corporations. The plaintiff insisted that any agreement omit such a payment. The parties never resolved this disagreement and therefore never executed a written agreement among themselves. Nevertheless, while the negotiations continued, Johnston introduced his telephone system contacts to Merritt and to other employees of the plaintiff. As a result, the plaintiff did cable recovery work for Bell of Pennsylvania. In addition, AED shipped cable to the plaintiff for refurbishing and reshipment to a telephone system with which AED had a contract for cable recovery.

In August, 1973, when the negotiations were "dead in the water," Johnston offered Merritt a job with AED. Merritt accepted on September 4, 1973. Merritt was not a director or officer of the plaintiff corporation. He had not contracted to continue his employment with it, nor had he agreed not to com-

pete with it. After Merritt accepted employment with AED, several other of the plaintiff's employees left the plaintiff to work for AED. In doing so, none of the employees breached contracts with the plaintiff.

In the absence of fraud, misrepresentation, intimidation, obstruction, molestation, or malicious acts, courts generally recognize no liability for inducing an employee not bound by an employment contract to move to a competitor.[3] *Harley & Lund Corporation* v. *Murray Rubber Co.*, 31 F.2d 932, 934 (2d Cir.), cert. denied, 279 U.S. 872, 49 S. Ct. 513, 73 L. Ed. 1007 (1929); *Republic Systems & Programming, Inc.* v. *Computer Assistance, Inc.*, 322 F. Sup. 619, 626–27 (D. Conn. 1970), aff'd, 440 F.2d 996 (2d Cir. 1971); *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.*, 169 Conn. 407, 415, 363 A.2d 86 (1975); *Skene* v. *Carayanis*, 103 Conn. 708, 714, 131 A. 497 (1926); see *Kecko Piping Co.* v. *Monroe*, 172 Conn. 197, 201–202, 374 A.2d 179 (1977); annot., 24 A.L.R.3d 821. This general rule rests on the policies of encouraging full, fair, and free economic competition; *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.*, supra; and allowing employees to obtain the full value of their services. *Harley & Lund Corporation* v. *Murray Rubber Co.*, supra, 934.

The trial court found none of the usual antecedents for the liability the plaintiff seeks to impose

---

[3] The plaintiff is a New Jersey corporation. Some of the acts related to this litigation may have occurred in New Jersey. Because neither party argues that New Jersey law governs, we assume that Connecticut law does. *Gorman* v. *Murphy Diesel Co.*, 42 Del. 149, 152, 29 A.2d 145 (1942); *Mitchell* v. *Craft*, 211 So. 2d 509, 512 (Miss. 1968).

on the defendants. On appeal, the plaintiff does not point to evidence of fraud, misrepresentation, intimidation, obstruction, or malicious acts but argues that the breach of a fiduciary duty can also serve as a basis for such liability. We need not consider the merits of that proposition because the trial court did not find and the evidence did not compel it to find that AED, Johnston, or Merritt, at the relevant time, owed the plaintiff a fiduciary duty not to induce its employees to quit its employ and work for AED.

A joint venture is a special combination of two or more persons who combine their property, money, effects, skill, and knowledge to seek a profit jointly in a single business enterprise without any actual partnership or corporate designation. *Lesser v. Smith,* 115 Conn. 86, 89, 160 A. 302 (1932); *Dolan v. Dolan,* 107 Conn. 342, 349, 140 A. 745 (1928). The relationship between contracting parties cannot amount to a joint venture unless the parties so intend. *Stone* v. *First Wyoming Bank,* 625 F.2d 332, 340–41 (10th Cir. 1980); *First Mechanics Bank v. Commissioner of Internal Revenue,* 91 F.2d 275, 278 (3d Cir. 1937); *Yonofsky* v. *Wernick,* 362 F. Sup. 1005, 1031 (S.D.N.Y. 1973); *Las Vegas Machine & Engineering Works, Inc.* v. *Roemisch,* 67 Nev. 1, 9–11, 213 P.2d 319 (1950). AED and Johnston never agreed to become joint venturers with the plaintiff.

As a matter of law, parties to joint ventures undertake fiduciary duties to each other concerning matters within the scope of the joint venture. During negotiations which the parties hope will lead to a joint venture, a fiduciary duty may arise as a matter of fact although the law would not infer

it merely from the relationship of the parties. *Sime* v. *Malouf,* 95 Cal. App. 2d 82, 98, 212 P.2d 946 (1950); see *Lucas* v. *Abbott,* 198 Colo. 477, 601 P.2d 1376 (1979). The fact that AED subcontracted work to the plaintiff and allowed the plaintiff to service AED accounts during the negotiations, however, did not compel the trial court to conclude that a relationship of trust and confidence existed between the plaintiff and AED or Johnston or that the plaintiff allowed AED and Johnston to become acquainted with its employees only on the basis that a joint venture, partnership, or other entity would emerge. Thus we cannot find error in the trial court's refusal to find that a fiduciary duty prohibited AED and Johnston from inducing the plaintiff's employees to switch to AED.

The plaintiff points to three pages in the transcript of Merritt's testimony as evidence that he directly solicited Theodore Lund and Kenneth Stroebl to leave the plaintiff and work for AED. Nothing on those pages suggests that Merritt solicited Stroebl. Merritt testified that he directly contacted Lund. The plaintiff, however, concedes that this solicitation occurred after Merritt had left its employ. Once Merritt left the plaintiff's employment, no fiduciary duty restrained him from using ordinary methods to encourage his former coworkers or subordinates to follow him to its competitor.[4] *American Republic Ins. Co.* v. *Union Fidelity Life Ins. Co.,* 470 F.2d 820, 824 (9th Cir. 1972); *Republic Systems & Programming, Inc.* v. *Computer Assistance, Inc.,* supra; *Standard*

---

[4] The plaintiff makes no claim that any of the defendants increased the effectiveness of the solicitations by using the plaintiff's personnel records. See *Bancroft-Whitney Co.* v. *Glen,* 64 Cal. 2d 327, 351, 411 P.2d 921 (1966).

*Brands, Inc.* v. *United States Partition & Packaging Corporation,* 199 F. Sup. 161, 174 (E.D. Wis. 1961); see *Knudsen Corporation* v. *Ever-Fresh Foods, Inc.,* 336 F. Sup. 241, 245 (C.D. Cal. 1971).[5]

There is no error.

In this opinion the other judges concurred.

---

[5] The policy of allowing workers to secure the best terms for their services precludes a perpetual ban on attempts by their former coworkers and supervisors to solicit them to join a competitor. Thus we find inapplicable to the present controversy those cases that found a fiduciary duty not to use trade secrets even after the termination of employment.