[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-identified file is the "Master File" for approximately 160 individual silicone gel breast implant product liability cases filed in Connecticut. Pursuant to court order, pleadings and motions which involve issues common to the individual files are filed in the Master File. The defendant Corning Incorporated (hereafter "Corning") has filed in the Master File a "Motion to Strike and Motion for Summary Judgment" seeking to strike and obtain summary judgment with respect to (a) the plaintiff's allegations against Corning in the Amended Master Complaint and (b) cross claims filed against Corning by co-defendants. Corning's motion is opposed by the plaintiffs and those co-defendants who have filed cross claims against Corning.
The threshold task for the court is to determine the nature of Corning's composite motion to strike and for summary judgment. Corning submitted with the motion a memorandum of law as well as several affidavits and numerous exhibits for the court's consideration. In its memorandum of law, Corning only CT Page 11628 briefly addressed the allegations of the plaintiffs' Amended Master Complaint and fails to sufficiently identify its claims of insufficiency as required by Practice Book § 154. The far greater portion of the memorandum is devoted to Corning's contention that it has no liability whatsoever under the Master Complaint and the cross claims because of the company's lack of involvement in the manufacture of silicone gel breast implants. This claim rests on factual rather than legal issues and demonstrates that Corning's claim is essentially one for summary judgment under Practice Book § 378 et seq. Insofar as Corning's motion is designated as a motion to strike, it is denied.
A second preliminary issue is whether Corning's motion for summary judgment on the cross claims is properly before the court. Pursuant to orders issued by the chief court administrator, all Connecticut silicone gel breast implant cases are transferred to the Waterbury judicial district for unified case management by the undersigned as presiding judge for silicone breast implant litigation. The cases are managed through the issuance by the court of case management orders. Case Management Order Number 3, issued on December 15, 1993, provides in paragraph 3 entitled "Cross claims,"
 Any defendant may file a cross claim against any other defendant in any individual file in accordance with the provisions of the Practice Book. Once such a cross claim is filed, however, all proceedings on the cross claim shall be stayed until further order of the court.
Corning's motion for summary judgment on the cross claims is not properly before the court because all proceedings on the cross claims have been stayed by the court. Corning did not seek to lift or modify the stay in order to file the pending motions. Moreover, as the above-cited portion of Case Management Order Number 3 reveals, cross claims are filed in individual breast implant files, not in the Master File. There is no master cross claim which can be addressed by a motion for summary judgment in the Master File. Insofar as Corning's motion for summary judgment is directed to cross claims filed against Corning, it is denied.
The court turns now to the merits of Corning's motion for summary judgment on the complaint. The plaintiffs' allegations against the defendants, including Corning, are set forth in two CT Page 11629 counts, the first under our state statutes concerning product liability, General Statutes § 52-572m et seq. The second count is brought under the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110a et seq. In accord with General Statutes § 52-572n(a), the single product liability count contains within it allegations of breach of warranty, negligence and other allegations which in a different type of action might be alleged in separate counts. However, General Statutes § 52-572n(a) provides that a product liability claim "shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." As a result, the plaintiffs have included their allegations of negligence and breach of warranty as well as other claims within the single product liability count.
The product liability count alleges that Corning engaged in the business of selling breast implants or component parts thereof, that Corning manufactured such implants or parts thereof, that Corning expressly and impliedly warranted the implants or parts thereof, that Corning was negligent in the design, manufacture, assembly, testing, inspection, etc. of the implants or parts thereof, that Corning violated the Connecticut Food, Drug and Cosmetic Act, General Statutes § 21a-91 et seq. in its sale of implants or parts thereof, that Corning violated General Statutes § 21a-126 in its advertising of the implants or component parts thereof, and that Corning falsely represented and fraudulently concealed information concerning the implants or parts thereof. The Amended Master Complaint further alleges that Dow Corning Corporation is a joint venture of Corning and Dow Chemical Company.
With respect to these allegations, Corning contends that there is no genuine issue as to any material fact and that Corning is entitled to judgment as a matter of law. The affidavits and exhibits submitted by Corning seek to establish the following undisputed facts. Corning was incorporated in New York State in 1936 as "Corning Glass Works." The change in the name of the corporation to Corning Incorporated occurred in 1989. In 1943, Corning and The Dow Chemical Company (hereafter "Dow Chemical") joined together to create a third corporation (hereafter "Dow Corning.") Dow Corning was incorporated in Michigan and Corning and Dow Chemical have at all times since the incorporation been the two shareholders of Dow Corning, each owning fifty percent of the Dow Corning Stock. Corning and Dow Chemical transferred all their technology, research, inventions, CT Page 11630 etc. in the field of silicone products to Dow Corning in 1943. Some twenty years later, in 1964, Dow Corning began selling silicone gel breast implants. Corning, which continues to have its principal offices in New York state, sells a variety of glass and ceramic products. Corning has never, however, designed, made, marketed or sold any silicone gel breast implants or any component parts thereof.
In their memorandum in opposition to Corning's motion for summary judgment, the plaintiffs contend that Corning is directly liable to the plaintiffs as a product seller under Connecticut's product liability act (Memorandum dated June 14, 1994, p. 52). However, nothing in the affidavit or exhibits submitted by the plaintiffs lends any evidentiary support to the contention that Corning has manufactured, sold or distributed silicone gel breast implants or any component parts thereof at any time.
At oral argument on Corning's motion for summary judgment, the court asked plaintiffs' counsel to state specifically where in the affidavits or exhibits submitted there was any evidence that Corning manufactured the implants or component parts thereof. Counsel responded that there was only one exhibit which implicated Corning as an implant manufacturer. The exhibit in question is minutes of a meeting of the board of directors of Dow Corning on March 7, 1968, held at Corning's office in New York City. Near the end of the minutes is a statement that certain documents were filed with the secretary of the meeting, including a "secrecy agreement dated December 7, 1967, with the Dow Chemical Company concerning Dow's new rubber." Reference to the transcript shows the following dialogue between the court and plaintiffs' counsel:
 THE COURT: A portion of the minutes that say "secrecy agreement dated December 7, 1967 with the Dow Chemical Company concerning Dow's new rubber"?
PLAINTIFFS' COUNSEL: That's correct.
THE COURT: And what do you infer from that?
 PLAINTIFFS' COUNSEL: What I'm inferring from that, and this goes to a completely separate argument, is that in terms of the veil piercing argument, that from the time Dow Corning was established, up until CT Page 11631 August 1, 1994, there were series of agreements between Dow Chemical and Dow Corning for the testing of organic silicone compounds, including the kind of silicone that's found in breast implants, and they thought — they found, basically, that it was a very dangerous and hazardous material.
 Corning, who is the co-owner, obviously, with Dow Chemical, it appears was involved in those negotiations from this document. That's all we have. What I'm trying to say, Your Honor, is there isn't any more than what appears on the face of it.
 THE COURT: But, what's on the face of it doesn't mention Corning.
 PLAINTIFFS' COUNSEL: It says that — it was held at their office, at Corning Glass Works in New York.
 CORNING COUNSEL: Are you referring to a Dow Corning board meeting?
PLAINTIFFS' COUNSEL: Yes.
 CORNING COUNSEL: Oh, okay. Corning has representatives on the Dow Corning board, but, this is a Dow Corning board. It's not Corning Glass.
 PLAINTIFFS' COUNSEL: I understand. All I'm trying — in answer to your question, is there anything else we have with respect to Corning, this is it.
 THE COURT: Well, let me make sure I understand it. The plaintiffs' claim is that this board of directors' meeting of Dow Corning was held at the office in New York City of Corning Glass Works, now Corning, Incorporated.
PLAINTIFF'S COUNSEL: Correct.
 THE COURT: And at that meeting, a document was filed with the secretary, which is a secrecy agreement dated December 7, 1967 with the Dow Chemical Company "concerning Dow's new rubber." CT Page 11632
 PLAINTIFFS' COUNSEL: Correct. That's all we have with respect to Corning.
 THE COURT: How does it implicate Corning, other than the fact that the meeting was at Corning's offices?
 PLAINTIFFS' COUNSEL: I don't know. All I'm — that's all I have in terms of whether or not they had anything to do with the agreements, that series of agreements I had just mentioned to Your Honor.
 Just for the record Your Honor, obviously, discovery is continuing in the MDL, and at this state of the pleadings, we don't have anything more than basically what we had originally filed. Just for the record, though, in the next couple of months, if something about this particular meeting takes place, we find out someone from Corning was also involved in secrecy agreements, I'd like to come before the court again with respect to that meeting. That's all. It's very, very limited.
THE COURT: I should say so. Go ahead.
The court recognizes that in ruling on a motion for summary judgment it is obligated to view evidence in the light most favorable to the non-moving party. Town Bank Trust Co. v.Benson, 176 Conn. 304, 309 (1978). However, the court sees no rational or logical connection between the secrecy agreement concerning rubber referred to in these Dow Corning minutes and plaintiffs' otherwise unsupported contention that Corning was an implant manufacturer. The court finds that there is no genuine issue as to any material fact with respect to Corning's alleged liability to plaintiffs as an implant manufacturer. Corning did not manufacture, sell, distribute or design silicone gel breast implants or any component part thereof. This finding relieves Corning as a matter of law of any liability under the product liability statute, the Connecticut Food, Drug and Cosmetic Act, General Statutes § 21a-91 et seq., General Statutes § 21a-126, and all of the other subsidiary allegations of the products liability count. It also resolves the CUTPA count in Corning's favor as well because the CUTPA count rests entirely on the incorporation of the allegations of the product liability count. CT Page 11633
The only remaining claim of the plaintiffs against Corning arises out of the allegation in the Amended Master Complaint that Dow Corning is "a joint venture of and wholly owned by" Dow Chemical and Corning. There is no dispute over the facts: Dow Chemical and Corning created Dow Corning and have always owned all of the Dow Corning stock on an equal basis. Dow Chemical and Corning have shared equally in the profits of Dow Corning. There is no dispute that from time to time since Dow Corning was incorporated in 1942, Corning or Dow Chemical have referred to Dow Corning as their "joint venture." These facts do not, however, give rise to liability on Corning's part for the actions of Dow Corning, a separately incorporated entity.
Dow Corning was incorporated under Michigan law. Michigan common law provides that a joint venture is an association of two or more persons to carry out a single business enterprise for profit. Hathaway v. Porter Royalty Pool, Inc., 296 Mich. 90,295 N.W. 571, 576 (1941). Whether or not a joint venture exists is a legal question for the court to decide. Berger v.Mead, 127 Mich. App. 209, 214, 338 N.W.2d 919, 922 (1983). Generally, a court determines whether a business entity is a joint venture where the parties themselves have failed to articulate the nature of their business relationship.
 A joint venture is a special combination of two or more persons who combine their property, money, effects, skill, and knowledge to seek a profit jointly in a single business enterprise without any actual partnership or corporate designation.
(Citations omitted; emphasis added.) Electronic Associates,Inc. v. Automatic Equipment Development Corp., 185 Conn. 31, 35
(1981).
The plaintiffs contend that Dow Corning is a joint venture of Corning and Dow Chemical notwithstanding the fact that Dow Corning is separately incorporated. The only case cited by plaintiffs which addresses the existence of a joint venture within a corporate form is Hathaway v. Porter Royalty Pool,Inc., supra. That case, however, is readily distinguishable from the current facts.
The corporation in Hathaway was created for a very limited purpose, to collect and distribute royalties to shareholders. CT Page 11634 The corporation was not created to conduct business for profit. It had only nominal paid-in capital and could not pay salaries to officers, use assets to conduct business or invest its assets. The board of directors had no discretion. Under these unusual circumstances the court found that the entity was a joint venture and not subject to the state's blue sky laws. In contrast, Dow Corning, a Fortune 500 company, manufactures and sells more than 2,000 products and services, employs more than 8,000 employees and observes all corporate formalities. Its board of directors has the customary and usual powers, including discretionary powers.
During oral argument on Corning's motion for summary judgment, the court inquired whether plaintiffs' counsel had any authority directly on point with the facts before the court. It became obvious that she did not:
 THE COURT: In terms of the joint venture, do you have or have you cited a case which is on point with the situation here, that is, one or two corporations or individuals form a third corporation to undertake production of a product in a field in which both of these others might have had some experience, and a court finds the two shareholders liable as joint venturers, despite the creation of the corporation?
 PLAINTIFFS' COUNSEL: We have nothing other than what I've already submitted in the briefs.
 THE COURT: Do you recall any case that you cited that was on point?
PLAINTIFFS' COUNSEL: No.
Generally, a joint venture and a corporation are "mutually exclusive ways of doing business." 8 Fletcher, Cyclopedia of Corporations, § 3997. 10 (Perm. Ed.). Although shareholders may be considered as partners with respect to their obligations to one another, the corporate form is to be respected in the corporation's dealings with third parties. Itel ContainersInternational Corp. v. Atlanttrafik Express Service Ltd.,909 F.2d 698, 702 (2d Cir. 1990). The plaintiffs here are just such third parties.
The court finds that there is no genuine issue of material CT Page 11635 fact with respect to Corning's alleged liability as a joint venturer. Corning is not liable as a joint venturer and Corning is entitled to summary judgment as a matter of law. Corning's motion for summary judgment on the plaintiffs' complaint is therefore granted.
In conclusion, the court notes that in its memorandum in support of its motion for summary judgment, Corning briefs the issue of whether Corning is liable to the plaintiffs under the theory of piercing the corporate veil. The plaintiffs also briefed this issue. The two-count Amended Master Complaint, however, contains no allegations pertaining to any claim by the plaintiffs of the right to pierce the corporate veil of Dow Corning. The court therefore does not address this issue.[1]
/s/ Vertefeuille, J. VERTEFEUILLE