Michael J. FRANCHETTI, Jr., and Diane P. Franchetti, Plaintiffs,

v.

INTERCOLE AUTOMATION, INC., a California corporation, and Stewart Bolling & Company, Defendants.

Civ. A. No. 80–361.

United States District Court, D. Delaware.

Jan. 11, 1982.

David H. Erisman, Conner, Daley, Erisman & vanOgtrop, Wilmington, Del., for plaintiffs.

B. Wilson Redfearn, Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This action for personal injuries was brought by Michael J. Franchetti and his wife, Diane P. Franchetti, both citizens of Delaware, against Intercole Automation, Inc., a California corporation, and Stewart Bolling & Company, an Ohio corporation. Jurisdiction is based on diversity of citizenship. In an earlier opinion the Court denied plaintiffs' motion *in limine* for a determination that the doctrine of strict tort liability applies in an action for personal injuries caused by defectively designed equipment manufactured, sold and delivered prior to the effective date of Delaware's Uniform Commercial Code. *Franchetti v. Intercole Automation, Inc.*, 523 F.Supp. 454 (D.Del. 1981). Presently before the Court is defendants' motion for summary judgment on plaintiffs' remaining negligence claim.

The relevant facts are largely undisputed and may be briefly stated. On October 3, 1979, plaintiff Michael J. Franchetti suffered injuries when his hand accidentally became caught in a calender operated by his employer Gates Engineering Company. In general terms, a calender is a machine comprised of heavy steel rolls mounted on a frame which, when driven by electric power units, operates in much the same fashion as the wringer units found in the now outdated wringer washing machines. The calender in question incorporated four rolls, heated to a temperature of approximately 180 degrees, through which bulk natural rubber was rolled into rubber sheeting.

While operating the calender, Mr. Franchetti accidentally caught his hand in the "bite" point of two rolls, *i.e.*, the point at which the two in-running rolls meet. Simply stated, plaintiffs' claim is that defendants were negligent in failing to design and construct the calender with proper safeguards to protect the operators. In addition, plaintiffs allege that defendants were also negligent in failing to adequately warn operators and/or users of the machine as to the dangers caused by its unguarded state.

The calender was manufactured, sold, and delivered by the defendants [1] to anoth-

---

1. At the time defendant Stewart Bolling & Company was an independent corporation. It is now a division of defendant Intercole Automation, Inc.

er manufacturer in 1949 and resold to Mr. Franchetti's employer in 1956. Although defendants press a number of arguments in support of their motion for summary judgment, in the final analysis their motion rests on two grounds. First, defendants argue that absent any showing of contractual privity plaintiffs' claims of negligence must fail. Acknowledging that Delaware recognizes an exception to the privity requirement where the product causing injury is imminently or inherently dangerous, defendants argue that the calender at issue cannot, as a matter of law, be regarded as imminently dangerous. Second, defendants argue that even if plaintiffs' claim is not barred by lack of privity, defendants were under no duty to either ensure Mr. Franchetti's safety or warn him of any danger which may have existed. Defendants argue that the dangers attendant to working in close proximity to the "bite point" are obvious and that even if the machine were negligently designed, they are protected by the so-called "patent danger rule." Defendants further assert that there is no duty to warn of obvious dangers inherent in the use of their products and that the danger complained of is a matter of common knowledge. Further, defendants argue that they could not foresee the uses to which the calenders would be put and were therefore under no duty to install safety devices which might or might not be effective depending on the circumstances.

A party moving for summary judgment bears a heavy burden. If any material factual issues are in dispute, the motion must be denied. *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781 (3d Cir. 1978); *Pettinaro Construction Co., Inc. v. Delaware Authority for Regional Transit*, 500 F.Supp. 559 (D.Del.1980); *Carpenter International, Inc. v. Kaiser Jamaica Corp.*, 369 F.Supp. 1138 (D.Del.1974). As this is a diversity case, the legal adequacy of plain-

tiffs' contentions, as well as the sufficiency of defendants' defenses must be gauged by Delaware law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). Each of defendants' contentions will be addressed in turn.

*Privity*

The general rule in Delaware sales cases is that:

[A] contractor, manufacturer or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of the article he handles.

*Gorman v. Murphy Diesel Co.*, 42 Del. 149, 153, 29 A.2d 145, 147 (Del.Super.1942);[2] *Moore v. Douglas Aircraft Co.*, 282 A.2d 625 (Del.Super.1971).

There is, however, a well recognized exception to the general rule which states:

[O]ne who sells or delivers an article which he knows to be imminently dangerous to life or limb of another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not.

*Gorman v. Murphy Diesel Co.*, 42 Del. at 153, 29 A.2d at 147; *Behringer v. William Gretz Brewing Co.*, 3 Story., 53 Del. 365, 169 A.2d 249 (Del.Super.1961). Although the quoted language and early cases might appear to limit the exception to cases involving negligent construction, the Delaware Supreme Court has since recognized that a manufacturer's duty extends to design defects as well. *Massey-Ferguson, Inc. v. Wells*, 383 A.2d 640 (Del.1978).

Defendant acknowledges the existence of the exception but argues that the machine in question is not imminently[3] dangerous.

---

**2.** It should be noted that the leading case in this area, *Gorman v. Murphy Diesel Co.*, 42 Del. 149, 29 A.2d 145 (Del.Super.1942), though technically a Superior Court decision, was decided by what was in effect the Delaware Supreme Court.

**3.** The Delaware state cases appear to use the terms "imminently" and "inherently" interchangeably, *Nacci v. Volkswagen of America, Inc.*, 325 A.2d 617, 619 (Del.Super.1974), and no attempt will be made to distinguish between the two.

The category of imminently dangerous articles is a vague one. Although it is possible to argue with the conclusions reached on a given set of facts, the cases generally fall into line with the general rule that a product is imminently dangerous when it poses a threat of serious physical harm if it proves to be defective. *See Moore v. Douglas Aircraft Co.*, 282 A.2d 625 (Del.Super.1971). Thus a cardboard carrier which breaks allowing six glass bottles to fall is not imminently dangerous, *Behringer v. William Gretz Brewing Co.*, 3 Story., 53 Del. 365, 169 A.2d 249 (Del.Super.1961), but a yoke and sling apparatus which breaks allowing an airplane engine to fall is. *Moore v. Douglas Aircraft Co.*, 282 A.2d 625 (Del.Super.1971). Similarly, a glass bottle which breaks in a child's hand is not imminently dangerous, *Ciociola v. Delaware Coca-Cola Bottling Company*, 3 Story., 53 Del. 477, 172 A.2d 252 (Del.1961), but an automobile steering mechanism which collapses is. *Dillon v. General Motors Corporation*, 315 A.2d 732 (Del.Super.1974).

Defendants argue that the obviousness of the danger presented by the calender as well as the length of time it had been in use without incident, both factors considered by the Court in *Gorman v. Murphy Diesel Co.*, 42 Del. 149, 29 A.2d 145 (1942), require this Court to conclude that as a matter of law the calender was not imminently dangerous. In *Gorman*, plaintiff alleged that a diesel engine, which had had two prior owners and was purchased some sixteen months before the accident, exploded due to the existence of hidden structural and mechanical defects. In sustaining defendant's demurrer the Court held that based on the allegations of the complaint there was no basis upon which a jury could find that the explosion was proximately caused by some unspecified negligence on the part of the defendant.

In contrast, in the instant case plaintiffs allege that a specific negligent act by defendants—the failure to provide adequate safeguards—was a proximate cause of the injury. The device in question clearly has the potential to seriously injure those who work in its close proximity, or at least the Court is not prepared, on a motion for summary judgment, to hold that it does not.[4] Neither the length of time the machine was operated without incident nor the obviousness of the danger can alter that fact, though they may be relevant to the issue of defendants' negligence and ultimate liability. *Moore v. Douglas Aircraft Co.*, 282 A.2d at 628.

*Patent Danger*

Defendants' argue that even if plaintiffs can recover without privity, their claim is barred by the so-called "patent danger rule." As defendants candidly acknowledge, the rule that a manufacturer has no duty to guard against injury from a patent peril or from a source manifestly dangerous, *Campo v. Scofield*, 301 N.Y. 468, 95 N.E.2d 802 (1950), *overruled, Micallef v. Miehle Co., Etc.*, 39 N.Y.2d 376, 348 N.E.2d 571, 384 N.Y.S.2d 115 (1976), has only been accepted in some jurisdictions. Indeed a recent survey concludes that while the rule

---

4. Certain Third Circuit cases would seem to suggest that a federal court in diversity must look to state law in deciding whether an issue should be decided by the trier of fact. *See, e.g., Baily v. Atlas Power Co.*, 602 F.2d 585 (3d Cir. 1979); *Baker v. Outboard Marine Corp.*, 595 F.2d 176 (3d Cir. 1979). As that Court recently noted, however, the cases in question were decided without reference to the "countervailing precedent that a federal court sitting in diversity is not bound by state law when the division of responsibility between judge and jury is implicated." *Hollinger v. Wagner Mining Equip. Co.*, 667 F.2d 402, at 410, n.11 (3d Cir. 1981). Most notably, in *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Supreme Court held that that division is governed by federal law. Although the Court reserved the issue in *Hollinger*, it would appear that, despite some confusion, the rule in this Circuit is in agreement with *Byrd*. *See Huddell v. Levin*, 537 F.2d 726 (3d Cir. 1976); *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 479–81 (3d Cir. 1973) (Rosenn, J., concurring).

The issue of whether the calender's potential to inflict serious physical harm is for the court or jury was neither briefed nor argued. Given the current state of the record, the Court will await further development of the underlying facts at trial.

appears viable in some seventeen jurisdictions, it has been rejected in eighteen and has been neither accepted nor rejected in sixteen. Darling, *The Patent Danger Rule: An Analysis and a Survey of its Vitality,* 29 Mercer L.Rev. 583 (1978) (hereinafter "Darling").

Unfortunately, Delaware is cited as being among the sixteen undeclared jurisdictions. Thus this Court must engage in the hazardous chore of predicting the future course of the development of Delaware law. In order to do so the Court must consider the policy considerations underlying decided Delaware cases, the holdings of the lower state courts, scholarly works and analogous decisions from other jurisdictions; but in the final analysis this Court's task remains the determination of what the Delaware Supreme Court would decide if presented with the issue. *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Becker v. Interstate Properties,* 569 F.2d 1203 (3d Cir. 1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

As explained by the court which is generally credited with having created the patent danger rule, the underlying rationale for requiring a plaintiff to prove the existence of a latent defect before recovering in a negligence action is founded on the notion that the legislature and not the courts should compel the manufacturer to install possible safety devices. *Micallef v. Miehle Co., Etc.,* 39 N.Y.2d 376, 348 N.E.2d 571, 384 N.Y.S.2d 115 (1976). The rule has been the subject of intense criticism, *see Darling* at 584, n.10 and n.11 (citing commentaries), and has been denounced as no more than an assumption of risk defense as a matter of law "with the added disadvantage that the defendant [is] relieved of the burden of proving that plaintiff had subjectively appreciated a known risk." Rheingold, *Expanding Liability of the Product Supplier: A Primer,* 2 Hofstra L.Rev. 521, 541 (1974). The doctrine has been viewed as inconsistent in that it places a duty on a manufacturer to develop a reasonably safe product, yet eliminates this duty, thereby granting

him immunity, if the product is obviously a bad one. The law, it is argued, should discourage misdesign rather than encouraging it in its obvious form. *E.g., Uloth v. City Tank Corp.,* 376 Mass. 874, 384 N.E.2d 1188 (1978); *Palmer v. Massey-Ferguson, Inc.,* 3 Wash.App. 508, 476 P.2d 713 (1970). As noted, some courts have taken a different view, but to the extent that there is a trend in recent opinion, it would seem to be away from the rule. *See Darling* at 606–09 (which notes, *inter alia,* that virtually all decisions repudiating the rule have been made since 1970).

Although neither Court nor counsel have found any Delaware cases which address the precise issue presented, the Delaware state courts have provided some guidance. The starting point in any discussion of trends in Delaware caselaw on products liability must be *Martin v. Ryder Truck Rental, Inc.,* 353 A.2d 581, 587 (Del.1976), wherein the Delaware Supreme Court expressed its willingness to allow the common law to "grow to fulfill the requirements of justice as dictated by changing times and conditions." Although the strict tort liability aspect of *Martin* was limited by the Court's holding in *Cline v. Prowler Industries of Md., Inc.,* 418 A.2d 968 (Del.1980) (en banc), the Court did not retreat from its commitment to developing the common law, it simply recognized that some of its options had been limited by legislative action. *See Franchetti v. Intercole Automation, Inc.,* 523 F.Supp. 454 (D.Del.1981).

In *Seiler v. Levitz Furniture Co. of the Eastern Region, Inc.,* 367 A.2d 999 (Del. 1976), defendant, an architect-engineer, argued he could not be held liable for alleged building defects because, *inter alia,* they were patent. Although the court declined to consider the argument which had not been presented to the trial judge, it noted that the trial judge's finding that plaintiff was not contributorially negligent included a consideration of whether the defect was so obvious that additional action by plaintiff was required. 367 A.2d at 1007. It should be noted that the Court's inclusion of

obviousness as a factor in determining the existence of contributory negligence would be logically inconsistent with raising it as an absolute bar to recovery. In *Massey-Ferguson, Inc. v. Wells*, 383 A.2d 640 (Del. 1978), the Delaware Supreme Court held that a plaintiff's burden in a negligence case is to establish that the defendant "failed to exercise the care of a reasonably prudent manufacturer *under all the circumstances.*" 383 A.2d at 642 (emphasis supplied), *quoting Restatement (Second) of Torts*, §§ 395, 398. Again the elevation of obviousness to a complete bar would be inconsistent with both the quoted language and the Restatement sections[5] relied on, none of which except obviously unreasonably dangerous products from their coverage. Indeed comment "b" to *Restatement (Second) of Torts*, § 398 explains that the obviousness of the risk is simply a factor to be considered in determining whether plaintiff is in contributory fault.[6] Although the issue is not without doubt, based on the foregoing, the Court concludes that if the Delaware Supreme Court were faced with the issue, it would follow the modern trend in rejecting the patent danger rule.

### Duty to Warn

 As stated in *Wilhelm v. Globe Solvent Co.*, 373 A.2d 218, 223 (Del.Super.1977) "[a] duty to warn arises when a manufacturer or seller of a product which, to his actual or constructive knowledge, involves danger to users, places the product on the market." Defendants argue that the duty "exists only when those to whom the warnings would go can reasonably be assumed to be ignorant of the facts which a warning would communicate." *Wilhelm v. Globe Solvent Co.*, 373 A.2d at 223, *citing Burton v. L. O. Smith Foundry Products Co.*, 529 F.2d 108 (7th Cir. 1976). Defendants argue that the danger attendant to working in close proximity to the "bite" point is so obvious that any warning would have been superfluous. Further, they note that even if plaintiff did not understand the danger as a matter of common knowledge, he must have realized it after completing six months of training as a calender operator. As stated by the Court in *Baynard v. American Motors Corp.*, 974 C.A.1974 (Del.Super. May 30, 1979), "This 'obviousness' issue raises a question of fact which must be resolved by the trier of fact." Slip op. at 5.

### Foreseeability

Defendants' final ground for summary judgment requires little discussion. It may well be, as defendants contend, that their inability to foresee the uses to which the calender in question might be put made it impossible for them to equip it with safety devices. That question, which goes to the existence of negligence, is one of fact and is inappropriate for resolution by motion for summary judgment.

Defendants' motion for summary judgment will be denied.

---

**5.** Section 395 provides:

A manufacturer who fails to exercise reasonable care in the manufacture of chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

Section 398 provides:

A manufacturer of a chattel made under a plan or design which makes it dangerous for the user for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design. ·

Commentary to section 398 explains that the above-quoted rule is simply a special application of that stated in section 395.

**6.** Comment "b" provides:

If the dangerous character of the plan or design is known to the user of the chattel, he may be in contributory fault if the risk involved in using it is unreasonably great or if he fails to take those special precautions which the known dangerous character of the chattel requires.