FIRST DIVISION

December 31, 2003

No. 1-02-1647

GLEN BLUE, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. ) 

) 

ENVIRONMENTAL ENGINEERING, INC., a ) 

wholly owned subsidiary of BROWNING-FERRIS ) 
No. 01 L 4314

INDUSTRIES, INC., a Delaware corporation, ) 

) 

Defendant-Appellee and )

Third-Party Plaintiff-Appellant
(footnote: 1) ) 

) 

(John M. Smyth Company, ) 
Honorable

) 
Barbara J. Disko,

Third-Party Defendant-Appellee). ) Judge Presiding.

JUSTICE GORDON delivered the opinion of the court:

On February 11, 2002, a jury returned a general verdict for plaintiff Glen Blue and against defendant Browning-Ferris Industries, Inc., and third-party defendant John M. Smyth Co., finding defendants guilty of negligence.  At the close of the evidence, the jury also answered a special interrogatory submitted by defendant Browning in the affirmative.  Finding that there was a fatal inconsistency between the general verdict and the response to the special interrogatory, the trial court granted Browning's motion for a judgment on the special interrogatory.  Judgment was thereafter entered for defendants.  Plaintiff now appeals the trial court's judgment on the special interrogatory and we reverse and remand for the following reasons.

BACKGROUND

The evidence presented at trial established that in 1975, defendant Browning-Ferris Industries, Inc. (Browning), sold to and installed a heavy duty trash compactor in the Downers Grove, Illinois, warehouse of third-party defendant John M. Smyth Co. (Smyth).  The compactor was generally used by Smyth employees to compact cardboard boxes, furniture and wooden skids, and was emptied by Browning upon request.  The compactor consisted of a ram which slid back and forth to compact the refuse put into the chamber.  It could be turned on and off after each compaction or could run in a continuous mode.  The control panel of the compactor contained a power switch and there was a pull cord hanging over the mouth of the compactor which would stop the machine.

In 1991, as the result of a safety audit conducted by the State of Illinois, Smyth installed a gate at the mouth of the compactor, which was designed to turn off the compactor when opened.  The bars of the gate were covered by wire mesh, which was subsequently removed by Smyth employees because it was regularly knocked off by boxes as they were pushed back by the ram.

In 1988, plaintiff began working part-time in Smyth's Northbrook, Illinois, warehouse, taking customer orders, retrieving furniture, accepting deliveries and operating the trash compactor at that facility.  In 1990, he was transferred to the Downers Grove warehouse where, he stated, his duties were similar to those he performed in Northbrook.  Plaintiff testified that he never received training on the Downers Grove trash compactor, but had operated it a number of times and watched other employees use the compactor.  Plaintiff stated at trial that the compactor often jammed and it was the usual practice of the employees, including the warehouse supervisor, Phillip Polizzi, to push refuse down into the compactor with one's foot while it was moving.  He did state, however, that he had been told not put his arms or legs into the moving compactor.  Polizzi and assistant warehouse supervisor Andrew Banda denied that they ever put their arms or legs into the moving compactor.  They stated that if they had ever observed an employee doing so, he would have received a written citation.

On November 5, 1996, plaintiff was assigned to operate the trash compactor.  He testified that he informed Banda a number of times that the compactor was full and would not operate properly.  He stated Banda told him to continue operating the compactor as the loading dock needed to be cleared of refuse.  At trial, Banda denied that plaintiff reported the compactor was full.  Plaintiff stated that after he placed a large sofa box into the compactor, the compactor stopped and would not crush the box.  While the compactor was running in a continuous mode, plaintiff placed his leg through the bars of the closed gate and pushed the box down with his foot so that it would be grabbed by the ram.  However, plaintiff's foot became caught in the box and plaintiff was pulled into the compactor as the ram took hold of the box.  Plaintiff stated he could not reach the pull cord to stop the compactor as it was several feet above his head when he was in the compactor.  He was thereafter hit by the ram approximately three times, resulting in a broken pelvis, leg and foot.

On May 5, 1994, plaintiff filed a complaint against a number of defendants including Browning.  Count I of the complaint was based in strict liability and alleged that at the time the trash compactor left Browning's control it was unreasonably dangerous for one or more of four listed reasons.  Count I was subsequently dismissed for being filed after the applicable statute of repose had expired.  Count IV of the complaint, based in negligence, alleged that it was defendant's duty to distribute a machine that was reasonably safe for its intended purpose and that one or more of the following acts or omissions by Browning proximately caused plaintiff's injuries:

"(a) Carelessly and negligently distributed a compactor machine with inadequate safety guards and devices to protect the operator.

(b)  Carelessly and negligently failed to provide a gate with a latch and safety switch; thereby creating an extra hazardous condition for operators using the same.

(c)  Carelessly and negligently failed to provide a Dead Man's switch near or at the site of the compactor's ram so that an operator could immediately stop the machine if his body was sucked into the same.

(d)  Carelessly and negligently failed to give employee adequate instruction and training in the use of an exceptionally and reasonably [
sic
] dangerous compacting device.

(e)  Carelessly and negligently failed to post adequate signs and failed to warn the operator that his body could be sucked into the machine because there were no safety devices located at or near the machine."

In response to plaintiff's complaint, defendant asserted various affirmative defenses, including that plaintiff assumed the risk of his injury by sticking his foot into the compactor, that plaintiff misused the compactor thereby proximately causing his own injury, and that plaintiff was contributorily negligent.

Following the presentation of the evidence summarized above, the jury was instructed that it could find defendant guilty of negligence if it found that plaintiff was injured and that the injury was proximately caused by the acts or omissions of defendant.  The jury was further instructed that if plaintiff's own negligence contributed to his injury, then it must find plaintiff was contributorily negligent and reduce any recovery accordingly; however, if it found plaintiff's contributory negligence to be more than 50% of the total proximate cause of his injury, plaintiff would be barred from any recovery.  The jury was also provided with a special interrogatory, over plaintiff's objection, which asked, "Was the risk of injury by sticking a foot over or through a gate into a moving compactor open and obvious?"  During the course of deliberations, the jury sent a question to the trial judge asking, "On the special interrogatory question, by answering yes, does it mean that the plaintiff was more than 50 percent negligent?"  The court responded, "Jurors, please answer the special interrogatory based on the evidence presented to you by all parties.  Also please review all of the instructions on the law that were given to you."

The jury then returned a general verdict for plaintiff and against defendant Browning and third-party defendant Smyth.  It awarded plaintiff $1,120,588, attributing 33% of the negligence to Browning, 35% to Smyth and 32% to plaintiff, thereby reducing plaintiff's recovery to $762,000.  However, the jury also answered Browning's special interrogatory in the affirmative.  Thereafter, Browning filed a motion for a judgment on the special interrogatory, arguing that the jury's response to the special interrogatory controlled over the general verdict and judgment should be entered in favor of defendants.  In granting the motion, the court stated: 

"I do find that the special interrogatory did relate to an ultimate issue of fact, and that it was inconsistent with the jury's finding for the plaintiff in assessing him only 32 percent contributorily negligent.

I appreciate the plaintiff's argument that the special interrogatory was not inconsistent with the jury's finding; but in reviewing his cases, they all made reference to the plaintiff being distracted or the defendant anticipating harm despite the obvious danger.  And I'm not convinced from his argument that it's consistent.

There is a finding that the jury's answer of yes to the special interrogatory is inconsistent; therefore, I am going to vacate the judgment of the jury and enter a judgment on the special interrogatory for the defense."

In its written order, the trial court further indicated that Browning's motion for judgment notwithstanding the verdict and for a new trial were "conditionally" denied, and Smyth's motion for reduction of verdict was "conditionally" granted.  According to the record, the motions were not considered on their merits and the trial judge entered the "conditional" decisions based solely on her entry of the judgment on the special interrogatory.  Plaintiff now appeals the trial court's judgment on the special interrogatory, contending that the special interrogatory should never have been submitted to the jury, as it was improper.  He further argues that even if the special interrogatory was proper, the jury's response was not inconsistent with the general verdict.  We reverse the judgment on the special interrogatory and reinstate the jury verdict.

ANALYSIS

The purpose of a special interrogatory is to guard " 'the integrity of a general verdict in a civil jury trial.' "  
Simmons v. Garces
, 198 Ill. 2d 541, 555, 763 N.E. 2d 720, 730 (2002), quoting 
O'Connell v. City of Chicago
, 285 Ill. App. 3d 459, 460, 674 N.E. 2d 105, 106 (1996).  To do so, the special interrogatory tests the general verdict against the jury's determination regarding an ultimate question of fact. 
 
Simmons
, 198 Ill. 2d at 555, 763 N.E. 2d at 730. 
 Special interrogatories are governed by section 2-1108 of the Code of Civil Procedure, which provides:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict.  The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing.  Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions.  Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law.  When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly."  735 ILCS 5/2-1108 (West 2002).

Plaintiff here contends that the trial court erred in submitting the special interrogatory to the jury because it was in an improper form and it was confusing.  A special interrogatory is in proper form if it meets the following criteria: "(1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned."  
Simmons
, 198 Ill. 2d at 563, 763 N.E. 2d at 734.  Furthermore, it should be a single question, the terms of which are simple, unambiguous, and understandable to the jury; it must not be repetitive, confusing or misleading.  
Simmons
, 198 Ill. 2d at 563, 763 N.E. 2d at 735.

In this regard, plaintiff specifically argues that the special interrogatory was not in proper form as the question of whether a danger is open and obvious in a negligence action does not relate to an ultimate issue of fact upon which the rights of the parties depend, nor would an answer responsive thereto be inconsistent with any general verdict that might be returned.  Defendant responds that the special interrogatory was properly submitted because where a danger is open and obvious, a product cannot be found to be unreasonably dangerous and therefore it is not actionable.  The central question we must consider then is whether the open and obvious doctrine served to bar the instant cause of action, thereby raising it to the level of an ultimate question of fact, the answer to which might be inconsistent with a general verdict against defendant.

Prior to addressing this question, however, we must resolve the parties' apparent disagreement regarding the theory of liability upon which this case was tried.  Defendant refers to this case as one based in product liability and thereafter analyzes it primarily under a theory of strict liability.  Plaintiff asserts that by doing so defendant misapplies Illinois law, as the cause of action was based in common law negligence.

Under the Restatement (Second) of Torts and existing case law, an action may be brought against the manufacturer of a product based on a theory of strict liability or common law negligence or both.  See Restatement (Second) of Torts §§395, 398, 402A (1965); see generally 
Carrizales v. Rheem Manufacturing Co.
, 226 Ill. App. 3d 20, 589 N.E. 2d 569 (1991); 
Flaugher v. Sears, Roebuck & Co.
 61 Ill. App. 3d 671, 378 N.E. 2d 337 (1978).  According to the complaint filed in this case, plaintiff alleged defendant was liable to him under theories of strict liability (count I ) and negligence (count IV).  However, defendant subsequently moved to dismiss count I of plaintiff's complaint due to the running of the statute of repose.  The motion was granted by the trial court on the grounds that a strict liability action must be filed within 12 years of the first date of sale of the product to its initial user.  See 735 ILCS 5/13-213(b) (West 1992).  Therefore, recovery here was ultimately grounded in the remaining count -- negligence.  As a result, although this action seeks recovery of damages for a defective product, defendant's liability was considered under common law negligence principles.
(footnote: 2)  Accordingly, we narrow our consideration to the determination of whether the open and obvious doctrine might have barred recovery in this negligence action.  For the following reasons, we conclude that it did not and that consequently the trial court erred in presenting the special interrogatory to the jury.

A product liability action asserting a claim based in negligence, such as negligent design, falls within the framework of common law negligence and is governed by principles of negligence law.  
Flaugher
, 61 Ill. App. 3d at 675, 378 N.E. 2d at 340.  To succeed in a general negligence action, a plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, an injury that proximately resulted from the breach, and damages.  
Carrizales
, 226 Ill. App. 3d at 24, 589 N.E. 2d at 572.  Regarding the duty requirement, in an action against a manufacturer for the negligent design of a product, it is generally the duty of the manufacturer "to design a product so that it will be reasonably safe for its intended use and for any reasonably foreseeable use." 
Flaugher
, 61 Ill. App. at 675, 378 N.E. 2d at 340.  The plaintiff must show then that the manufacturer breached his duty to design something safer for the user because the quality of the product in question was insufficient.  
Rotzoll v. Overhead Door Corp
, 289 Ill. App. 3d 410, 419, 681 N.E. 2d 156, 162 (1997).

In this case, defendant argues that the open and obvious nature of the dangerous condition of the trash compactor negated any duty on the part of defendant to correct its unsafe design.  Although the impact of the open and obvious doctrine in cases addressing a duty to warn and in premises liability cases is clearly resolved in the Restatement and under general case law, there is little to guide us on this question with respect to product liability cases which are grounded in negligence.

Precedent is clear that where a danger is open and obvious, there is no duty to 
warn
 a consumer of that danger.  Restatement (Second) of Torts §388, Comment 
k
 (1965); 
Ford v. Nairn
, 307 Ill. App. 3d 296, 300, 717 N.E. 2d 525, 528 (1999); 
Klen v. Asahi Pool, Inc.
, 268 Ill. App. 3d 1031, 1038, 643 N.E. 2d 1360, 1365 (1994).  The underlying rationale for this rule is cogent and logical in that nothing of value is gained by a warning regarding a dangerous condition that is already obvious to the average consumer and is generally appreciated. 
 
Wortel v. Somerset Industries, Inc.
, 331 Ill. App. 3d 895, 901, 770 N.E. 2d 1211, 1216 (2002).  Therefore, where the duty of care owed by a defendant is fully satisfied by providing a warning, the open and obvious doctrine may serve as an absolute bar to any recovery, as the open and obvious nature of the danger is the equivalent of such a warning.
(footnote: 3)
 Where, however, the duty of care owed by the defendant extends beyond the giving of a warning, the open and obvious nature of the risk can no longer serve as an absolute bar.  The best example of this is found in premises liability cases, which provide for two exceptions to the open and obvious doctrine, which are discussed below.  There are also some examples of the extension of a defendant's duty of care beyond a duty to warn in product liability cases.  See 
Wortel
, 331 Ill. App. 3d at 902, 770 N.E. 2d at 1216 ("the open and obvious nature of the risk is not a 
per se
 bar to recovery in a design defect case"); 
Osborn v. Mission Ready Mix
, 224 Cal. App. 3d 104, 122, 273 Cal. Rptr. 457, 468 (1990) (although the obviousness of a danger may obviate the duty to warn of its existence, if it is foreseeable that the danger may cause injury despite the fact that it is obvious, there may be a duty to remedy the danger). 

In premises liability cases, the open and obvious nature of a condition generally affects whether the resulting harm was foreseeable (
Newby v. Lake Zurich Community Unit, District 95
, 136 Ill. App. 3d 92, 98-99, 482 N.E. 2d 1061, 1066-67 (1985)), which, in turn, is relevant in determining whether a duty and proximate cause exist (see 
LaFever v. Kemlite Co.
, 185 Ill. 2d 380, 389, 706 N.E. 2d 441, 446 (1998);
 
Preze v. Borden Chemical, Inc.
, 336 Ill. App. 3d 52, 57, 782 N.E. 2d 710, 714 (2002)).  In these cases, the open and obvious nature of a dangerous condition 
may
 preclude recovery, unless one of various exceptions is present.  See 
Sollami v. Eaton
, 201 Ill. 2d 1, 15, 772 N.E. 2d 215, 223 (2002).  These exceptions are provided in the Restatement itself and have been throughly discussed by the courts.  They include: (1) the distraction exception -- where the possessor of the property has reason to expect that an invitee's attention may be distracted and therefore he will not notice the danger; and (2) the deliberate encounter exception -- where "the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."  Restatement (Second) of Torts §343A, Comment 
f
 (1965); 
Sollami
, 201 Ill. 2d at 15, 772 N.E. 2d at 223;
 
Wreglesworth v. Arctco, Inc.
, 317 Ill. App. 3d 628, 639, 740 N.E. 2d 444, 453 (2000).

The parties to this action have not cited any case law specifically applying the open and obvious doctrine to product liability actions based in negligence, other than the above-mentioned failure to warn cases.
(footnote: 4)  In addressing such a negligence action, we note that the Restatement clearly recognizes that a danger known to the user may be a basis for contributory negligence.  In fact, comment 
b
 to section 398 of the Restatement provides:

"If the dangerous character of the plan or design is known to the user of the chattel, he may be in contributory fault if the risk involved in using it is unreasonably great or if he fails to take those special precautions which the known dangerous character of the chattel requires."  Restatement (Second) of Torts §398, Comment 
b
 (1965).

However, the Restatement does not purport to address whether, in a product liability action, an open and obvious danger would absolve the manufacturer from owing any further duty of care with respect to the challenged instrumentality.  This failure has been interpreted by some courts as an indication that the Restatement does not take the view that an open and obvious risk in a product liability case based in negligence would completely bar recovery, even where recovery is premised on the negligent failure to warn, but would instead be an incremental factor to be considered with respect to the defense of contributory negligence.  See
 
Franchetti v. Intercole Automation, Inc.
, 529 F. Supp. 533, 538 (Del. 1982) (noting that the issue is "not without doubt," the United States District Court in Delaware found that the "elevation of obviousness to a complete bar would be inconsistent with *** the Restatement sections relied on, none of which except obviously unreasonably dangerous products from their coverage").

Nevertheless, we are persuaded that the analysis which applies in strict liability cases as well as premises liability cases should equally apply to negligent design cases in that where a risk is open and obvious, there is no efficacy to be achieved by any warning.  Under that rationale, there would be no reason to differentiate between strict liability or negligence, whether based on premises liability or negligent design.  This position was taken by this court in its recent decision in 
Wortel v. Somerset Industries, Inc.
, 331 Ill. App. 3d 895, 770 N.E. 2d 1211 (2002), which held that the open and obvious doctrine applies to all product liability actions, whether based in negligence or in strict liability.  
Wortel
, 331 Ill. App. 3d at 900 n. 1, 770 N.E. 2d at 1215 n. 1 ("the 'open and obvious' doctrine has been applied in both negligence claims and strict liability claims").

However, as in 
Wortel
, we recognize that in a product liability action, whether premised on negligence or strict liability, the open and obvious nature of a condition would not 
per se
 bar recovery at least with respect to actions such as this one, which are predicated on allegations of defective design and not merely on a failure to warn.
  The 
Wortel
 court acknowledged that prior to 1990, the sole test used to determine the existence of a design defect was the "consumer expectation test."  The consumer expectation test provided that "strict liability applies 
only
 when a product is 'dangerous to an extent beyond that which would be contemplated by the ordinary [person] ***, with the ordinary knowledge common to the community as to its characteristics.' "  (Emphasis in original and omitted.)  
Wortel
, 331 Ill. App. 3d at 901, 770 N.E. 2d at 1215, quoting 
Hunt v. Blasius
, 74 Ill. 2d 203, 211-12, 384 N.E. 2d 368, 372 (1978), quoting Restatement (Second) of Torts §402A, Comment 
i
 (1965).  Under that test, the open and obvious nature of a danger would bar recovery where the injury was the result of inherent properties of the product, which were obvious to anyone who came into contact with it.  
Wortel
, 331 Ill. App. 3d at 901, 770 N.E. 2d at 1215.

However, in 1990, the Illinois Supreme Court declared in 
Lamkin v. Towner
, 138 Ill. 2d 510, 529, 563 N.E. 2d 449, 457 (1990), that a plaintiff may prove a manufacturer's liability for defective design by an alternate method, known as the risk-utility test.  The supreme court stated that a plaintiff may demonstrate a product is defective in design by introducing evidence that the product design proximately caused his injury.  
Lamkin
, 138 Ill. 2d at 529, 563 N.E. 2d at 457.  The burden then shifts to the defendant, who must "prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs."  
Lamkin
, 138 Ill. 2d at 529, 563 N.E. 2d at 457.  In determining the adequacy of a product's design under this test, the jury may consider the gravity of the danger posed by the challenged design, the likelihood that the danger would occur, the mechanical feasibility of a safer alternative design, and the adverse consequences to the product and to the consumer that would result from an alternative design.  
Wortel
, 331 Ill. App. 3d at 904, 770 N. E. 2d at 1218, quoting 
Barker v. Lull Engineering Co.
, 20 Cal. 3d 413, 431, 573 P.2d 443, 455, 143 Cal. Rptr. 225, 237 (1978).  Pursuant to 
Lamkin
, the 
Wortel
 court concluded that, under the risk-utility test, the open and obvious nature of the risk is just one factor to be considered within this range of considerations and it
 will only serve to bar the liability of the manufacturer where it outweighs all other factors to be considered in weighing the inherent design risks against the utility of the product as manufactured.  See 
Wortel
, 331 Ill. App. 3d at 907, 770 N.E. 2d at 1220.  We see no reason why the application of the risk-utility test to the open and obvious danger doctrine should not be applied in negligence cases just as it is applied in strict liability cases.  See 
Wortel
, 331 Ill. App. 3d at 900 n. 1, 770 N.E. 2d at 1215 n. 1 (the open and obvious doctrine is applied in both negligence and strict liability cases); 
Harnischfeger Corp. v. Gleason Crane Rentals, Inc.
, 223 Ill. App. 3d 444, 455, 585 N.E. 2d 166, 173 (1991), quoting J. Wade, 
On The Nature of Strict Tort Liability for Products
, 44 Miss. L.J. 825, 837 (1973) (" '[t]here are *** innate similarities between the actions in negligence and in strict liability, and changing the terminology does not alter this' "); 2 D. Dobbs, Law of Torts, ch. 24, at 984 (2001) (most courts have "rejected any automatic application of the open and obvious danger rule").

Our courts have recognized that the policy considerations employed to determine whether a duty exists in a negligence case are very similar to those employed in the strict liability risk-utility analysis.  See 
Harnischfeger Corp.
, 223 Ill. App. 3d at 455-56, 585 N.E. 2d at 173-74.  To determine the existence of a duty in a negligence action, the court will consider: (1) foreseeability, (2) likelihood of injury, (3) magnitude of the burden on the defendant to guard against the injury, and (4) consequences of placing a burden on the defendant.  
Preze
, 336 Ill. App. 3d at 57.  The risk-utility test employs the following considerations: (1) the gravity of the danger posed by the challenged design, (2) the likelihood that such danger would occur, (3) the mechanical feasibility of a safer alternative design, and (4) the adverse consequences to the product and to the consumer that would result from an alternative design.  
Wortel
, 331 Ill. App. 3d at 904, 770 N.E. 2d at 1218.  As previously noted, the similarities between the considerations employed by these tests cannot be negated by simply changing the terminology.  See 
Wright v. Brooke Group Ltd.
, 652 N.W.2d 159, 165 (Iowa 2002) ("the risk/benefit analysis employed in a strict liability design defect case is the same weighing process as that used in a negligence case").  "Whether the doctrine of negligence or strict liability is being used to impose liability 
the same process is going on in each instance
, i.e., weighing the utility of the article against the risk of its use."  (Emphasis in original.)  
Wright
, 652 N.W.2d at 165.  Accordingly, as in a strict liability action, the open and obvious nature of a dangerous condition is but one factor to be considered in a negligence action against a manufacturer.  It is a factor to be considered in determining the existence of a legal duty (
Harnischfeger Corp.
, 223 Ill. App. 3d at 459, 585 N.E. 2d at 175), and, as in 
Wortel
, will only serve to bar recovery where the magnitude of the risk is so small and the utility of a safer design so negligible that no duty to provide a safer product should be imposed.  See, 
e.g.
,
 
Nova Southeastern University, Inc. v. Gross
, 758 So. 2d 86, 90 (Fla. 2000) (Florida Supreme Court determined in common law negligence case that the issue of the victim's knowledge of the dangerousness of condition should be considered when determining breach of duty and proximate cause, and in attributing proportional fault); 
Soler v. Castmaster, Division of H.P.M. Corp.
, 98 N.J. 137, 146, 484 A.2d 1225, 1230 (1984) (New Jersey Supreme Court determined that, as designed, the risk of danger inherent in machine in question outweighed its usefulness where the evidence showed "a demonstrable risk of harm to a foreseeble [
sic
] user of the machine in the absence of a safety gate and interlock" and where "the evidence revealed that the technology for incorporating these safety devices was known to the industry at the time the machine was manufactured and *** such devices were available and could have been incorporated into the machine without appreciable cost and without impairing its function"
).

As a result, we conclude that the special interrogatory in this case was in improper form and should not have been submitted to the jury.  As previously stated, a special interrogatory is in proper form if it relates to an ultimate issue of fact upon which the rights of the parties depend and an answer responsive thereto is inconsistent with some general verdict that might be returned.  The issue of whether a danger is open and obvious does not ultimately decide the rights of the parties in a negligence action without further consideration of how the open and obvious nature of the danger compares and balances against the likelihood and seriousness of injury, the foreseeability of injury on the part of 
defendant
, the feasibility of placing the burden of correcting the dangerous condition on the defendant and the consequences thereof.  The jury in this case was asked whether the danger of putting a foot through a gate into a moving trash compactor was open and obvious.  It was not asked whether the apparent risk outweighed the utility of the machine used, whether there were reasonable safety devices available to prevent the harm caused or whether defendant's duty to produce and implement a safer design was outweighed by the obvious nature of the danger.  Since this interrogatory left open all of these other considerations, it did not present an ultimate question of fact nor did it determine the rights of the parties; it merely addressed one consideration of many that must be balanced in a product liability negligence claim.  See 
Bruske v. Arnold
, 44 Ill. 2d 132, 136, 254 N.E. 2d 453, 456 (1969) (Illinois Supreme Court found that a special interrogatory was properly refused in a contributory negligence case where it asked only if the plaintiff exercised due care and did not include the element of whether his own negligence contributed to his injuries); 
Ross v. Aryan International, Inc.
, 219 Ill. App. 3d 634, 651, 580 N.E. 2d 937, 947-48 (1991) (the trial court properly rejected the defendant's special interrogatory regarding the 
defendant
's actual or constructive knowledge of a dangerous condition because, although its knowledge was a material fact that bore on the negligence element, it did not by itself address proximate cause or injury, two other essential elements of negligence)
.

Correspondingly, even if the focus were
 not on the formal sufficiency of the special interrogatory, the jury's answer thereto was not inconsistent with its general verdict.  "Where the special interrogatory does not cover all of the issues submitted to the jury and a reasonable hypothesis exists to permit the general verdict to be construed consistently with the special interrogatory, they cannot be said to be absolutely irreconcilable and the special finding will not control."  
LaPook v. City of Chicago
, 211 Ill. App. 3d 856, 865, 570 N.E. 2d 708, 713 (1991); 
Cohen v. Sager
, 2 Ill. App. 3d 1018, 1020, 278 N.E. 2d 453, 456 (1971) (in order for the verdict to be inconsistent, the answer to the special interrogatory must exclude every reasonable hypothesis consistent with the general verdict)
.

This conclusion is consistent with the evidence presented in this case.  There is little question here that plaintiff presented sufficient evidence to raise a risk-utility issue.  This evidence included the testimony of Marvin Salzenstein, a consulting engineer, with a specialty in machine design and safety, who testified in plaintiff's case in chief.  Salzenstein testified that the trash compactor was negligently designed because it should have incorporated one or more safety features which were available at the time Smyth bought the compactor: (1) "a sustained manual pressure control," so that the machine would automatically stop when the on button was released; (2) "an interlock guard over the point of operation," which would prevent reaching into the machine while the ram was in motion, and an automatic shut-off when the guard was opened; 

(3) eradication of the machine's continuous mode so that it would automatically stop after each cycle; or (4) an emergency stop device within the convenient reach of the operator.  Salzenstein stated that the gate added to the compactor by Smyth did not operate as a sufficient guard because it did not prevent a person from reaching into the machine, and therefore, the machine was still unreasonably dangerous.  Furthermore, plaintiff testified that the machine did not actually stop as it was supposed to when the gate was opened.  Regarding the severity of the possible injury, Salzenstein stated that if the compactor had not been full at the time of the accident, plaintiff might have been pulled further into the machine and actually severed by the ram.

Under the risk-utility test, the burden then shifted to defendant to show that, on balance, the benefits of the challenged design outweighed the risk of danger inherent in the design.
  
Lamkin
, 138 Ill. 2d at 529, 563 N.E. 2d at 457.  We find no indication in the record that defendant presented such evidence.  There was no testimony that the utility of the machine would have been hampered by such precautions, that the cost of further precautions were prohibitive, or that the danger involved was not serious or likely to occur.  Even if defendant did present such evidence, it would have been up to the jury's discretion which witnesses to believe and a determination that plaintiff's witnesses were more believable still would have provided a reasonable hypothesis for its holdings.

As a result, given the testimony presented, a reasonable hypothesis exists to construe the jury's finding that the danger was open and obvious as consistent with its general verdict for plaintiff.  The jury was free to weigh the factors discussed above and determine that the open and obvious nature of the danger did not outweigh defendant's obligation to manufacture a safer product.  Instead, the jury may have appropriately attributed the open and obvious nature of the risk taken by plaintiff to its finding that he was contributorily negligent and the resulting reduction in damages.  Therefore, the trial court erred in finding the answer to the interrogatory was fatally inconsistent with the general verdict.

In accordance with the above, we reverse the judgment entered on the special interrogatory and reinstate the jury's verdict.  We further remand the cause to the trial court for reconsideration of the parties' posttrial motions, two of which the trial court conditionally denied and one which it conditionally granted based solely on its entry of judgment on the special interrogatory.

Reversed and remanded.

McNULTY, J. and McBRIDE, J. concur.

FOOTNOTES
1:
Although defendant Browning-Ferris Industries identifies itself as a cross-appellant and asserts under its "Nature of Action" heading that it "cross appeals the trial court's denial of directed verdict motions and the court's failure to properly instruct the jury," we have been provided with no briefs or argument regarding this contention.  As a result, we will not consider it in this appeal.  See 188 Ill. 2d R. 341(e)(7).

2:
The jury instructions likewise reflect that the case was tried under common law negligence principles.

3:
To the extent that plaintiff in this case alleged a duty to warn in subsections d and e of count I of his complaint, the open and obvious doctrine is controlling and would have precluded recovery.  However, plaintiff also alleged in subsections a, b and c that the compactor was negligently designed, and we 
analyze the remainder of this case based on those allegations.

4:
Although many of the strict liability cases discussed below state that the original cause of action asserted one count in negligence and one count in strict liability, those cases generally provide discussion only of strict liability and do not specifically address negligence.